UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HERTZ SCHRAM PC,

     Plaintiff,

                                        Civil Action No. 12-CV-14234

vs.

                                        HON. MARK. A. GOLDSMITH

FEDERAL BUREAU OF INVESTIGATION,

     Defendant.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT FEDERAL BUREAU OF INVESTIGATION'S MOTION FOR SUMMARY JUDGMENT (DKT. 26)

### I.      INTRODUCTION

This is a case brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. The matter is presently before the Court on the motion for summary judgment (Dkt. 26) filed by Defendant Federal Bureau of Investigation ("FBI").  For the reasons that follow, the Court denies the motion with respect to the adequacy of the FBI's search for records responsive to Plaintiff Hertz Schram, PC's FOIA request and grants the motion with respect to the FBI's withholding of materials under the FOIA exemptions.

### II.      BACKGROUND[1]

---

[1] These facts are gleaned from: (i) the declaration of David M. Hardy, section chief of the Record/Information Dissemination Section Records Management Division, Def. Ex. 1 (Dkt. 26-2); (ii) the attachments to Hardy's declaration; and (iii) the Vaughn index outlining the documents that were withheld.  Def. Ex. 2 (Dkt. 26-9).  See Rugiero v. United States Dep't of Justice, 257 F.3d 534, 544 (6th Cir. 2001) (noting that because FOIA cases are usually decided on summary judgment prior to discovery, the factual background in a FOIA case is generally provided by certain documents submitted by the defendant agency, such as a "'Vaughn index,' a routine device through which the agency describes the documents responsive to a FOIA request and indicates the reasons for redactions or withholdings in sufficient detail to allow a court to

On August 24, 2012, Plaintiff submitted to the FBI a request for disclosure of documents under FOIA.  FOIA Request, Def. Ex. 1(A) (Dkt. 26-3).  The FOIA request states:

> This shall serve as a request for information pursuant to the Freedom of Information Act.  Information is requested for the time period of 2007 to the present for any and all records, reports, notes, correspondence, witness statements (whether in writing or sound recordings), studies and documents of any kind, in electronic and hard copy format (collectively, the "Documents"), regarding the investigation and determination to include the identification of the "Juggalos" as a "gang" in the National Gang Intelligence Center's "2011 National Gang Threat Assessment Emerging Trends" (the "Report"), including, but not limited to, the following:
>
> 1. All Documents in support of the statement, "The Juggalos, a loosely-organized hybrid gang, are rapidly expanding into many US communities."
>
> 2. All Documents in support of the statement, "Many Juggalos subsets exhibit gang-like behavior and engage in criminal activity and violence."
>
> 3. All Documents in support of the statement, "Law enforcement officials in at least 21 states have identified criminal Juggalo sub-sets."
>
> 4. All Documents in support of the statement, "Most crimes committed by Juggalos are sporadic, disorganized, individualistic, and often involve simple assault, personal drug use and possession, petty theft, and vandalism."
>
> 5. All Documents in support of the statement, "Open source reporting suggests that a small number of Juggalos are forming more organized subsets and engaging in more gang-like criminal activity, such as felony assaults, thefts, robberies, and drug sales."
>
> 6. All Documents in support of the statement, "Social networking websites are a popular conveyance for Juggalo sub-culture to communicate and expand."
>
> 7. All Documents in support of the statement, "In January 2011, a suspected Juggalo member shot and wounded a couple in King County, Washington, according to open source reporting."

---

make an independent assessment of the claims for exemptions . . . .", as well as detailed affidavits).

Plaintiff does not contest the facts gleaned from the Hardy declaration and <u>Vaughn</u> index. Plaintiff admits all facts presented by the FBI, with one exception:  Plaintiff asserts that the FBI's paraphrased summary of Plaintiff's FOIA request is inaccurate.  <u>See</u> Pl. Counter-Statement of Material Facts, Pl. Resp. at 1-4 (Dkt. 29).

8. All Documents in support of the statement, "Juggalos' disorganization and lack of structure within their groups, coupled with their transient nature, makes it difficult to classify them and identify their members and migration patterns."

9. All Documents in support of the statement, "Many criminal Juggalo sub-sets are comprised of transient or homeless individuals, according to law enforcement reporting."

10. All Documents in support of the statement, "Law enforcement reporting suggests that Juggalo criminal activity has increased over the past several years and has expanded to several other states."

11. All Documents in support of the statement, "Transient, criminal Juggalo groups pose a threat to communities due to the potential for violence, drug use/sales, and their general destructive and violent nature."

12. All Documents in support of the statement, "In January 2010, two suspected Juggalo associates were charged with beating and robbing an elderly homeless man."

13. All documents providing the name, last known professional address and last known place of employment of all individuals who authored or contributed to the above referenced statements as set forth in the Report.

Id. On August 27, 2012, a legal administrative specialist at the FBI sent an email indicating that the FBI received Plaintiff's FOIA request. Def. Ex. 1(B) (Dkt. 26-4).

On September 25, 2012, Plaintiff filed its complaint in this case (Dkt. 1). The complaint asserts that the FBI, up to that date, had not provided the records requested by Plaintiff. The complaint seeks an order compelling the FBI to disclose the requested documents, provide for expeditious proceedings, and award Plaintiff costs and attorney fees. Compl. at 3 (CM/ECF pagination).

After withholding certain documents based on a number of different exemptions, the FBI released various records to Plaintiff. On December 6, 2012, the FBI notified Plaintiff that the FBI had reviewed 63 pages of documents and was releasing 62 pages. Def. Ex. 1(D) (Dkt. 26-6).

3

On January 30, 2013, the FBI notified Plaintiff that the FBI had reviewed 93 additional pages of documents and was releasing 40 pages.  Def. Ex. 1(E) (Dkt. 26-7).

On August 11, 2012, another organization — MuckRock.com — submitted a FOIA request to the FBI.  Pl. Ex. 2 (Dkt. 29-3).  The MuckRock FOIA request stated:

> I hereby request the following records:
>
> Any and all responsive documents mentioning the Detroit, Michigan based hip-hop group the Insane Clown Posse, aka 'ICP', its members Joseph Bruce, aka 'Violent J,['] and Joseph Utsler, aka 'Shaggy 2 Dope,' their classification as a street gang, any criminal activity carried out by "members" of the "gang" (known as the 'Juggalo Family'), their annual gathering, 'The Gathering of the Juggalos,' and any documents sent on behalf of the Insane Clown Posse directed to the FBI.
>
> Please ensure that copies of this request are also sent to the Detroit field office, specifically the Detroit Violent Gang Task Force.

Id.  MuckRock.com received 121 pages in response to this request.  Pl. Ex. 3 (Dkt. 29-4).

### III.  OVERVIEW OF FOIA AND LEGAL STANDARD

FOIA provides a mechanism to compel, from agencies of the United States, the disclosure of records that are not subject to specified exemptions.  5 U.S.C. § 552(a)(3), (b).  The Supreme Court has explained,

> [FOIA] seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands. Subsection (b) [governing exemptions] is part of this scheme and represents the congressional determination of the types of information that the Executive Branch must have the option to keep confidential, if it so chooses.

Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation and quotation marks omitted).

"The burden is on the agency to demonstrate . . . that the materials sought may be withheld due to an exemption." Vaughn v. United States, 936 F.2d 862, 866 (6th Cir. 1991) (citation omitted).

The district courts of the United States have "jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). The district court's review of the agency's decision is de novo. Detroit Free Press, Inc. v. Dep't of Justice, 73 F.3d 93, 95 (6th Cir. 1996).

The Sixth Circuit has explained the standard of review for agency decisions under FOIA:

> Procedurally, district courts typically dispose of FOIA cases on summary judgment before a plaintiff can conduct discovery. Jones v. FBI, 41 F.3d 238, 242 (6th Cir. 1994). This posture creates a situation in which a plaintiff must argue that the agency's withholdings exceed the scope of the statute, although only the agency is in a position to know whether it has complied with the FOIA unless the court reviews a potentially massive number of documents in camera. Id. One means developed to address this situation is the use of a "Vaughn index," a routine device through which the agency describes the documents responsive to a FOIA request and indicates the reasons for redactions or withholdings in sufficient detail to allow a court to make an independent assessment of the claims for exemptions from disclosure under the Act. Id. at 241-42; Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973). Ordinarily, the agency may justify its claims of exemption through detailed affidavits, which are entitled to a presumption of good faith. Jones, 41 F.3d at 242 (citing United States Dep't of State v. Ray, 502 U.S. 164, 179 (1991)). Evidence of bad faith on the part of the agency can overcome this presumption, even when the bad faith concerns the underlying activities that generated the FOIA request rather than the agency's conduct in the FOIA action itself. Id. at 242-43. Unless evidence contradicts the government's affidavits or establishes bad faith, the court's primary role is to review the adequacy of the affidavits and other evidence. Ingle, 698 F.2d at 265 (quoting Cox v. United States Dep't of Justice, 576 F.2d 1302, 1312 (8th Cir. 1978)); Silets v. United States Dep't of Justice, 945 F.2d 227, 231 (7th Cir. 1991) (citing Kimberlin v. Department of Treasury, 774 F.2d 204 (7th Cir. 1985)). "If the Government fairly describes the content of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the government's position." Ingle, 698 F.2d at 265 (quoting Cox, 576 F.2d at 1312).

Rugiero v. United States Dep't of Justice, 257 F.3d 534, 544 (6th Cir. 2001).  "To prevail on summary judgment, the government must show that it made a good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information and that any withholding of materials was authorized within a statutory exemption."  Rimmer v. Holder, 700 F.3d 246, 255 (6th Cir. 2012) (citations and quotation marks omitted).

## IV.   ANALYSIS

For the reasons set forth in more detail below, the Court concludes that the FBI has not shown that the search for records was sufficient; the declaration does not adequately describe the search for records, and, because the FBI misconstrued Plaintiff's FOIA request, the FBI's search was not conducted in a manner reasonably responsive to the request.  The FBI has, however, met its burden of demonstrating that the withholding of certain materials was authorized under FOIA exemptions 5, 6, 7(C), 7(D), and 7(E).  The Court will, therefore, deny the FBI's motion for summary judgment with respect to the adequacy of the search and grant the FBI's motion with respect to the withholding of materials.

### A. Adequacy of the FOIA Search

For the reasons that follow, the Court concludes that the FBI has not met its burden of demonstrating that its search for the requested records was sufficiently responsive to Plaintiff's FOIA request.  Although the Court rejects Plaintiff's argument that the existence of additional documents potentially responsive to Plaintiff's request raises a genuine issue of fact regarding the adequacy of the search, the Court's analysis does not end there.  It is the FBI's burden to establish that the search was conducted using methods reasonably expected to produce the requested information.  The Court concludes that the FBI has not met this burden for two reasons: (i) the declaration submitted in support of the search does not adequately describe the

search for records and (ii) the FBI misconstrued the FOIA request and therefore did not conduct a search reasonably tailored to the request.  For these reasons, the Court will deny the FBI's motion for summary judgment with respect to the adequacy of the search.

The Sixth Circuit has explained the standard for a district court's review of an agency's search in response to a FOIA request:

> In response to a FOIA request, an agency must make a good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information.  Campbell v. United States Dep't of Justice, 164 F.3d 20, 27 (D.C. Cir. 1998). The FOIA requires a reasonable search tailored to the nature of the request.  Id. at 28.  At all times the burden is on the agency to establish the adequacy of its search.  Patterson v. IRS, 56 F.3d 832, 840 (7th Cir. 1995); Steinberg v. United States Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).  In discharging this burden, the agency may rely on affidavits or declarations that provide reasonable detail of the scope of the search.  Bennett v. DEA, 55 F. Supp. 2d 36, 39 (D.D.C. 1999) (citing Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982)).  "In the absence of countervailing evidence or apparent inconsistency of proof, [such affidavits] will suffice to demonstrate compliance with the obligations imposed by the FOIA."  Id. The question focuses on the agency's search, not on whether additional documents exist that might satisfy the request.  Steinberg, 23 F.3d at 551 (quoting Weisberg, 745 F.2d at 1485).

Rugiero, 257 F.3d at 547.

With this standard in mind, the Court turns to the parties' arguments.  The FBI argues that it conducted a search that was reasonably calculated to uncover relevant documents.  Def. Br. at 13 (Dkt. 26).  The FBI asserts that Plaintiff's FOIA request sought only the records on which the National Gang Intelligence Center ("NGIC") relied in classifying the Juggalos as a gang in the "2011 National Gang Threat Assessment Emerging Trends" report (the "2011 report").  Id. at 14.  The FBI, therefore, claims that it conducted a reasonable, tailored search responsive to Plaintiff's limited request, and that it disclosed the records on which NGIC relied

7

and that were not protected from disclosure.  Id.  The FBI maintains that the MuckRock request is materially different from Plaintiff's request, because the MuckRock request asks for all documents mentioning the Insane Clown Posse or the Juggalos, while Plaintiff's FOIA request was limited to documents on which NGIC relied in classifying the Juggalos as a gang.  Def. Reply at 3-4 (Dkt. 31).  The FBI contends that discovery should be denied because Plaintiff fails to show that discovery would be necessary to resolve a genuine issue of material fact regarding the adequacy of the search.  Id. at 6.  The FBI further argues that records in its possession supporting the identification of the Juggalos as a gang after the 2011 report would not be responsive to Plaintiff's request.  Id. at 6-7.

Plaintiff argues that the fact that the FBI produced additional documents in response to the MuckRock FOIA request than in response to Plaintiff's FOIA request creates a genuine issue of material fact regarding whether the FBI fulfilled its disclosure obligations, because the MuckRock request was substantively identical to Plaintiff's request.  Pl. Resp. at 7-8 (Dkt. 29). Plaintiff asserts that the discrepancy in documents produced serves as evidence of bad faith on the FBI's part, id. at 9, and argues that discovery should be allowed as to the scope of the search and the indexing procedures.  Id. at 9 n.1.

Plaintiff also contends that it is immaterial that its FOIA request was centered on the 2011 report and MuckRock's FOIA request was more general, because both documents seek any records supporting the FBI's continued listing of Juggalos as a gang.  Id. at 10.  Plaintiff also argues that its FOIA request asks for "all documents in support of" various statements made in the 2011 report, and that, because the Juggalos continue to be classified as a gang by NGIC, the FBI should have included any documents since the 2011 report that support that continued listing.  Id. at 10 n.2.

The Court concludes that Plaintiff's argument that the discrepancy between the documents released in response to the MuckRock request and the documents released in response to Plaintiff's request creates a genuine issue of material fact lacks merit. In evaluating the adequacy of a FOIA search for records, "[t]he factual question is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." CareToLive v. Food & Drug Admin., 631 F.3d 336, 340 (6th Cir. 2011) (citations omitted); see also Rugiero, 257 F.3d at 547 ("The question focuses on the agency's search, not on whether additional documents exist that might satisfy the request." (citation omitted)). Therefore, the appropriate inquiry turns on the nature of the search — whether the search was reasonably calculated to discover the requested documents — not on whether every document responsive to the FOIA request actually was uncovered. Even if the extra documents submitted in response to the MuckRock request would have been responsive to Plaintiff's request as well, the mere fact that additional responsive documents exist that were not disclosed does not, without more, indicate that the FOIA search was inadequate. See id. at 547-548 (concluding that although the plaintiff argued that the agency must have had responsive documents that were undisclosed, "our legal standard focuses on the adequacy of the search, not the chance that additional responsive documents exist, [so] summary judgment for [the agency] was appropriate").

Although the Court rejects Plaintiff's argument regarding the MuckRock request, the Court's analysis does not end there. Although Plaintiff does not challenge the declaration describing the search or argue that this document reveals that the search was inadequate, the burden is on the FBI to demonstrate the search's adequacy. See id. at 547. Therefore, the Court must analyze whether the Hardy declaration adequately describes the search and whether the

search was reasonably calculated to uncover responsive documents.  See id. at 544 ("Unless evidence contradicts the government's affidavits or establishes bad faith, the court's primary role is to review the adequacy of the affidavits and other evidence." (citations omitted)); id. at 547 ("[A]n agency must make a good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information.").   The Court concludes that the FBI has not met its burden for two reasons: (i) the declaration does not describe the search of the NGIC's records in sufficient detail and (ii) the briefing and Hardy declaration indicate that the FBI misconstrued Plaintiff's FOIA request and that the search was not responsive to the FOIA request.

The Hardy declaration provides the following description of the FBI's search in response to Plaintiff's FOIA request.  The FBI's main records system is the Central Record System ("CRS"), which contains a numerical sequence of files on varied subject matters.  Hardy Dec. ¶ 11.  The CRS is primarily designed as an investigative tool, but the FBI also routinely searches the CRS for documents responsive to FOIA requests using the Automated Case Support System.  Id. After receiving Plaintiff's FOIA request, the Record/Information Dissemination Section ("RIDS") of the FBI searched the CRS using keywords such as "Juggalo," "Juggalos," "Juggalo gang," and "2011 National Gang Threat Assessment Emerging Trends."  Id.  No responsive records were located during these searches.  Id.

RIDS subsequently contacted the NGIC for assistance in locating responsive records.  Id. ¶ 12.  The NGIC, which was established by the FBI, collects, shares, and analyzes information on the "growth, migration, criminal activity, and association of gangs that pose a significant threat to communities throughout the United States." Id. ¶ 14.  The NGIC's 2011 report was based on federal, state, local, and tribal law enforcement and corrections agency information; the

10

NGIC synthesized, analyzed, and presented this data.  Id. ¶ 15.

After RIDS contacted the NGIC, "NGIC reviewed its files and located the material it relied upon in preparing the 2011 National Gang Threat Assessment-Emerging Trends report." Hardy Dec. ¶ 12.  NGIC provided 156 pages of records to RIDS for processing.  Id.  "RIDS concluded that it was not reasonably likely that any other office in the FBI would maintain the records that NGIC relied upon in preparing its 2011 National Gang Threat Assessment-Emerging Trends report."  Id.  RIDS then processed the records "for maximum disclosure consistent with the access provisions of the FOIA."  Id. ¶ 19.

The records included both public source materials and materials solicited from law enforcement agencies regarding information they had gathered about the Juggalos.  Id. ¶¶ 17, 18. All public source materials were provided to Plaintiff in full, with the exception of one page and a handwritten notation, prepared by an FBI analyst, that were redacted.  Id. ¶ 17.  The FBI also released to Plaintiff any public source material interspersed throughout the law enforcement materials.  Id. ¶ 18.  Finally, the Vaughn index prepared for this case lists records and information that were collected in response to Plaintiff's FOIA request but were withheld or only partially released; the index marks these records as exempt under various FOIA provisions.  Id. ¶ 20; Vaughn index, Def. Ex. 2 (Dkt. 26-9).

The Court first concludes that although the Hardy declaration adequately describes the FBI's search of the CRS, the declaration does not describe the NGIC's search for records in sufficient detail.  The declaration does describe, in reasonable detail, the FBI's search of the CRS database, including specific search terms.  Furthermore, the search terms are reasonably calculated to reveal any documents regarding either the 2011 report or the Juggalos in general. Additionally, RIDS' decision that no other office in the FBI would be likely to maintain the

records NGIC relied on in preparing the report is a permissible and reasonable conclusion.  See Knight v. Nat'l Aeronautics & Space Admin., 04-2054, 2006 WL 3780901, at *5 (E.D. Cal. Dec. 21, 2006) ("[T]here is no requirement that an agency search all possible sources in response to a FOIA request when it believes all responsive documents are likely to be located in one place." (citing Oglesby v. United States Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990)).

However, the declaration's description of the NGIC's search for records is insufficient. The declaration only states that "NGIC reviewed its files and located the material it relied upon in preparing the [2011 report]."  The declaration does not describe how the NGIC organized or searched its files, nor does the declaration provide information regarding "the procedures [the NGIC] used to process [the] request and to ensure that it appropriately responded to the request." CareToLive, 631 F.3d at 341.  The declaration does not "explain in reasonable detail the scope and method of [the NGIC's] search," Morley v. C.I.A., 508 F.3d 1108, 1121 (D.C. Cir. 2007) (citation omitted), nor does it "identify[] the terms searched or explain[] how the search was conducted" by the NCIG.  Id. at 1122 (citation omitted).   The FBI, therefore, has not met its burden of producing affidavits or declarations adequately describing the search.

Second, the Court concludes that the FBI misinterpreted Plaintiff's FOIA request and, therefore, conducted a search that was not responsive to Plaintiff's request.  The request sought all documents "regarding the investigation and determination to include the identification of the 'Juggalos' as a 'gang' in the [2011 report] . . . ."  The FBI asserts that Plaintiff's FOIA request sought only the records on which the NGIC relied in classifying the Juggalos as a gang in the 2011 report.  See Def. Br. at 14 ("[P]laintiff's FOIA request sought only the records on which the NGIC relied in deciding to classify Juggalos as a 'gang' in its 2011 report. . . . Defendant

12

conducted a reasonable search for records responsive to plaintiff's limited request." (emphasis in original)).  The Court disagrees.

The plain language of the request encompasses a range of documents beyond those on which the NGIC relied in deciding to classify the Juggalos as a gang in the 2011 report.  The request for documents "regarding the investigation and determination to include the identification of the 'Juggalos' as a 'gang'" contemplates, for example, documents weighing against classifying the Juggalos as a gang.  It also contemplates documents regarding the investigation of the Juggalos in preparation for the 2011 report, but on which the NGIC did not actually rely in preparing the report or classifying the Juggalos as a gang.  In other words, the language of the request encompasses not only documents relating to the decision to classify the Juggalos as a gang, but also, more generally, the investigation of the Juggalos for suspected gang activity in preparation for the report.  The documents on which the NGIC relied in deciding to classify the Juggalos as a gang in the 2011 report constitute only a subset of possible documents "regarding the investigation and determination to include the identification of the 'Juggalos' as a 'gang.'"

It is true that Plaintiff, as the party making the FOIA request, had the "burden of adequately identifying the record requested."  22 C.F.R. § 171.5(c); see also Rugiero, 257 F.3d at 548 (noting that a FOIA request must reasonably describe the documents sought).  The Court concludes, however, that Plaintiff's request, by its plain language, reasonably describes a range of documents that is not limited to only those documents on which the NGIC relied in preparing the 2011 report.

What is more, an agency "has a duty to construe a FOIA request liberally," Nation Magazine, Washington Bureau v. United States Custom Service, 71 F.3d 885, 890 (D.C. Cir.

1995) (citation omitted), so even if the FBI perceived some ambiguity in Plaintiff's FOIA request — a perception that the Court does not share — the FBI nevertheless had an obligation to interpret the request liberally toward broader disclosure. See Miccosukee Tribe of Indians of Florida v. United States, 516 F.3d 1235, 1255 (11th Cir. 2008) ("Even if the EPA found the scope of the Tribe's June 3rd request to be ambiguous, it was obliged under FOIA to interpret both that request, and certainly the unambiguous February request before it, liberally in favor of disclosure.").

Because the FBI misinterpreted Plaintiff's FOIA request, the search for records was not sufficiently responsive to Plaintiff's request. There is no indication that documents regarding the investigation of the Juggalos as a gang in connection with the 2011 report, but on which the NGIC did not actually rely in classifying the Juggalos as a gang, were disclosed. The Court concludes from the Hardy declaration that the records disclosed were responsive to only a portion of Plaintiff's request, not its entirety. Therefore, the FBI has not shown that its search was "reasonably calculated to discover the requested documents." CareToLive, 631 F.3d at 340.[2]

The parties also dispute whether the FBI is required to disclose records dating after the 2011 report. Plaintiff argues that because the 2011 report continues to be maintained online, and because the FOIA request asked for all documents in support of various statements made in the

---

[2] The Court notes, too, that the Hardy declaration is inconsistent in its interpretation of the FOIA request. At one point, the declaration characterizes the request as "plaintiff's multi-part FOIA request seeking access to documents regarding the identification of Juggalos as a 'hybrid gang' in the [2011 report]." Hardy Dec. ¶ 3. Later, the declaration notes that "[i]n response to RIDS's search request for records responsive to plaintiff's FOIA request, NGIC provided the materials upon which is [sic] relied in preparing the portion of the [2011 report] relating to Juggalos." Id. ¶ 16. The FBI's brief, however, clearly adopts the latter interpretation of Plaintiff's request, see Def. Br. at 14, and both the Hardy declaration and the FBI's brief assert that the NGIC only searched for records on which it relied in deciding to classify the Juggalos as a gang.

2011 report, the FOIA response should include any documents after the report was authored that support the continued classification of Juggalos as a gang. Pl. Resp. at 10 n.2. The Court agrees that documents responsive to Plaintiff's request are not limited to documents created prior to the authoring of the 2011 report.

The FOIA request sought documents and information "for the time period of 2007 to the present," "regarding the investigation and determination to include the identification of the 'Juggalos' as a 'gang' in the [2011 report], including, but not limited to, the following: [documents in support of various statements made in the 2011 report]." The request was made on August 24, 2012, and specifically seeks documents "for the time period of 2007 to the present"; therefore, the express language of the request contemplates documents dating from after 2011 "regarding the investigation and determination" to classify the Juggalos as a gang in the 2011 report.[3]

In one case analyzing a FOIA request in which the defendant agency searched for documents produced only within a two-month period, the court concluded that the temporal scope of the search was too narrow:

> While the underlying events occurred in November and December of 2001, [the plaintiff has] clearly requested all records "pertaining" or "relating to" the underlying events, including any subsequent investigations. Pls.' Ex. 2 at 3-4. For instance, the FOIA request expressly seeks "[a]ll records pertaining to the existence or reported existence of a grave in or around Dasht-e-Leili (using this or other spelling) in Afghanistan in November or December 2001, including records of physical evidence of a mass grave or investigations conducted contemporaneously or subsequently to determine whether such a grave exists...." Id. at 4 (emphasis added).
>
> Consequently, summary judgment is appropriate for [the plaintiff] on the adequacy of CENTCOM's search. There is no genuine dispute that the temporal scope of CENTCOM's search was too narrow and did not comport with [the

---

[3] For example, documents regarding comments or criticism the agency received about statements in the report after its publication could be relevant.

> plaintiff's] FOIA petition. Therefore, CENTCOM must conduct a new search that
> is designed to obtain responsive documents generated from November 1, 2001,
> until the start date of its new search.

Physicians for Human Rights v. United States Dep't of Defense, 675 F. Supp. 2d 149, 164 (D.D.C. 2009) (some citations omitted); see also Center for Biological Diversity v. Office of United States Trade Representative, 450 F. App'x 605, 608 (9th Cir. 2011) ("Restricting the search for documents to that time period in which 'detailed discussion of implementation issues' occurred is simply not warranted by [the plaintiff's] request, which asked for all records related to the implementation of the program." (emphasis in original)).

Like the FOIA request in Physicians for Human Rights, Plaintiff's FOIA request expressly sought records "regarding" two underlying events — the investigation and determination to classify the Juggalos as a gang in the 2011 report — and the request expressly encompassed records relating to, but dating after, the report.  Because Plaintiff's request sought records "from 2007 to the present," the appropriate temporal scope of the FBI's request would have been 2007 to the start date of the FBI's search.  See Physicians for Human Rights, 675 F. Supp. 2d at 164 (ordering documents to be produced that were generated as of the start date of the search).

In short, because the Hardy declaration does not adequately describe the NGIC's search for records and because the FBI misconstrued Plaintiff's FOIA request, the FBI has not met its burden of showing "that it made a good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information."  Rimmer, 700 F.3d at 255.   The Court, therefore, denies the FBI's motion for summary judgment with respect to the adequacy of the search.

### B.  Withholding Materials Under FOIA Exemptions

The FBI maintains that all documents withheld or partially released were properly withheld under FOIA exemptions to disclosure and that no reasonably segregable, nonexempt information was withheld.  Def. Br. at 15, 27; Hardy Dec. ¶ 47.  Plaintiff has not challenged the FBI's withholding of material under specific exemptions.[4]  However, the Sixth Circuit has held that the defendant agency bears the burden of demonstrating that records were lawfully withheld pursuant to a FOIA exemption.  See Rimmer, 700 F.3d at 255 ("To prevail on summary judgment, the government must show . . . that any withholding of materials was authorized within a statutory exemption." (citations and quotation marks omitted)).  The Court will therefore analyze the FBI's claimed exemptions.  For the reasons that follow, the Court concludes that the FBI has met its burden of showing that the withholding of materials was authorized under applicable FOIA exemptions.

### 1.  Exemption 5

The FBI relied on FOIA Exemption 5, and in particular the deliberative process privilege, to withhold handwritten notes by an FBI analyst, as well as information, assessments, gang member identification forms, and a police report solicited and obtained by the NGIC from law enforcement agencies.  Hardy Dec. ¶¶ 27, 28; see also Vaughn index.  The FBI asserts that the various inter-agency or intra-agency documents were properly withheld under the deliberative process privilege of Exemption 5, because such documents were predecisional and would reveal the NGIC's decision-making process.  Def. Br. at 16.  The FBI also argues that various

---

[4] The Court notes that at oral argument on January 16, 2014, Plaintiff asserted, for the first time, opposition to Defendant's withholding of materials.   Arguments raised for the first time at a hearing or oral argument are not properly before the Court.  See Van Sickle v. Automatic Data Processing, Inc., 952 F. Supp. 1213, 1221 (E.D. Mich. 1997) (noting that summary judgment was inappropriate on an issue raised for the first time at a hearing, because the opposing party did not have an opportunity to respond); White v. FedEx Corp., No. 04–00099, 2006 WL 618591, at *2 (N.D. Cal. Mar. 13, 2006) ("The Court will not consider any arguments or evidence raised for the first time at the hearing.").

memoranda from outside law enforcement agencies fall under the ambit of Exemption 5, because the outside agencies were communicating with NGIC as part of the consultative process, and because the memos were predecisional and reflected the deliberative, consultative inter-agency process. Id. at 17-19.

Exemption 5 prevents disclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  The Sixth Circuit has explained the requirements to invoke the deliberative process privilege:

> To come within [Exemption 5] on the basis of the deliberative process privilege, a document must be both "predecisional," meaning it is "received by the decisionmaker on the subject of the decision prior to the time the decision is made," and "deliberative," the result of a consultative process. Although this privilege covers recommendations, draft documents, proposals, suggestions, and other subjective documents that reflect the opinions of the writer rather than the policy of an agency, the key issue in applying this exception is whether disclosure of the materials would "expose an agency's decisionmaking process in such a way as to discourage discussion within the agency and thereby undermine the agency's ability to perform its functions."

Rugiero, 257 F.3d at 550 (citations omitted).

The Court concludes that the FBI properly withheld documents under Exemption 5.  The documents withheld are intra-agency or inter-agency memos; the handwritten notes of the FBI analyst are an intra-agency memo, Hardy Dec. ¶ 27, and the outside law enforcement agencies that submitted records were acting as consultants to the FBI for the purpose of collecting and providing gang-related information.  Id. ¶ 28; see Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 10-11 (2001) (holding that records submitted by outside consultants to the agency may fall under the deliberative process privilege, if "the consultant does not represent an interest of its own, or the interest of any other client, when it advises the agency that hires it.").

18

Furthermore, all the intra-agency and inter-agency memos were prepared and submitted prior to the FBI's issuance of its decision in the 2011 report.  Hardy Dec. ¶¶ 27, 28.  Therefore, the documents, which were "received by the decisionmaker on the subject of the decision prior to the time the decision is made," were predecisional.  See Rugiero, 257 F.3d at 550 (citation and quotation marks omitted).

Finally, the memos were "the result of a consultative process," or deliberative.  See id. The intra-agency notes reflected the thoughts of the FBI analyst, and the law enforcement memos were prepared in consultation with the FBI on the subject of gang reports, detailed gang intelligence, and reports of gang-related criminal activity.  Hardy Dec. ¶¶ 27, 28; Vaughn index. The Hardy declaration certifies that disclosure of the information would reveal NGIC's deliberative process. Hardy Dec. ¶ 28.  The Court concludes that the FBI has sufficiently shown that such materials are exempt from disclosure under FOIA Exemption 5.

### 2.  Exemptions 6 and 7(C)

The FBI relied on FOIA Exemptions 6 and 7(C) to withhold names and identifying information regarding FBI agents and staff, state and local law enforcement and other personnel, third parties of investigative interest, and third parties mentioned in law enforcement and other reports.  Hardy Dec. ¶¶ 32-38; Vaughn index.  The FBI argues that these records were properly withheld, because the records would have impinged on substantial privacy interests of individuals named in the records, without any substantial public interest in disclosure.  Def. Br. at 22-23.

Title 5 U.S.C. § 552(b)(6) exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  Title 5 U.S.C. § 552(b)(7)(C) exempts from disclosure "records or information

19

compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."  Because the names and identifying information of the individuals in the records withheld under Exemption 6 appeared in FBI documents compiled for a law enforcement purpose — preparing the NGIC report — it is appropriate to apply the more protective standard of Exemption 7(C) to the withholding of this information.  Rimmer, 700 F.3d at 256-257 ("Because it is undisputed that all the redactions at issue were contained in FBI records compiled for the purpose of law enforcement, the district court correctly applied the more protective standards of Exemption 7(C) to both the government's Exemption 6 and Exemption 7(C) redactions.").  In applying Exemption 7(C), courts have balanced the invasion of privacy against the public interest in disclosure.  See, e.g., id.; Nat'l Ass'n of Retired Fed. Employees v. Horner, 879 F.2d 873, 879 (D.C. Cir. 1989).

The Court concludes that the individuals whose identifying information was redacted from the above-mentioned documents have a substantial privacy interest in avoiding disclosure of their identity.  First, the FBI agents and staff, as well as law enforcement personnel, have an interest in avoiding publicity that could expose them to harassing or hostile actions.  Hardy Dec. ¶¶ 33, 35-36.  Furthermore, third parties of investigative interest or whose names were mentioned in law enforcement reports have an interest in avoiding being publicly linked to a law enforcement investigation.  Hardy Dec. ¶¶ 37, 38; see also SafeCard Servs., Inc. v. S.E.C., 926 F.2d 1197, 1205 (D.C. Cir. 1991) (noting that the privacy interest at stake in disclosing the identity of targets of law enforcement investigations is substantial).  The Court further concludes that there is no substantial public interest in disclosure of this identifying information; the identities of these individuals do not reveal anything about the workings of the government, and

20

they are not probative of any agency's behavior or performance.  Id.; see also Horner, 879 F.2d at 879.  The FBI has sufficiently shown that these materials are exempt from disclosure under Exemptions 6 and 7(C).

### 3.  Exemption 7(D)

The FBI relied on FOIA Exemption 7(D) to withhold information provided by confidential law enforcement sources or under an implied assurance of confidentiality.  Hardy Dec. ¶¶ 40-43; Vaughn index.  The FBI argues that these records were withheld because they would have exposed identifying information of confidential sources.  Def. Br. at 23-24.  The FBI argues that this exemption applies both to individuals acting as confidential sources, and to law enforcement agencies and individuals who would not have provided the information to NGIC without an expectation of confidentiality.  Id. at 24-25.

Exemption 7(D) exempts from disclosure:

records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).

A confidential source may be an individual, a state, local, or foreign agency, or a private institution.  United States Dep't of Justice v. Landano, 508 U.S. 165, 172 (1993).  "[T]he question is not whether the requested document is of the type that the agency usually treats as confidential, but whether the particular source spoke with an understanding that the communication would remain confidential."  Id. (emphasis in original).  "A source should be deemed confidential if the source furnished information with the understanding that the FBI

21

would not divulge the communication except to the extent the Bureau thought necessary for law enforcement purposes." Id. at 174. An expectation of confidentiality may arise from express assurances of confidentiality, but if there were no express assurances of confidentiality, the specific factual circumstances of a case may lead to an inference of an implied assurance of confidentiality. Id. at 179. However, if no express assurances of confidentiality were received, the agency must "assess confidentiality based on the particular circumstances applicable to each source." Rugiero, 257 F.3d at 552.

The Hardy declaration indicates that the FBI withheld information provided by law enforcement agencies after concluding that such information had been provided under circumstances where assurances of confidentiality either were express or could be inferred. Hardy Dec. ¶ 42. Many of the law enforcement bulletins and reports that were marked "confidential" or "for law enforcement dissemination only," id., and the Court concludes that these markings indicate that the law enforcement agency submitted such communications to the FBI with the understanding that the communications would remain confidential. See Meserve v. United States Dep't of Justice, No. 04-1844, 2006 WL 2366427, at *10 (D.D.C. Aug. 14, 2006) (concluding that a notice affixed to a state law enforcement document stating that the date in the document "is only to be used for criminal justice purposes" reasonably demonstrated that the state provided the document under an implied assurance of confidentiality). Such communications are protected from disclosure under Exemption 7(D). See Landano, 508 U.S. at 172.

There were also some law enforcement bulletins and identification forms that were not marked as "confidential," but were withheld under Exemption 7(D). Hardy Dec. ¶ 42; see also Vaughn index. These documents include one intelligence bulletin, a police report, and the gang

22

member identification forms.  Hardy Dec. ¶ 42.  The Hardy declaration indicates that such documents can be deemed confidential, because the law enforcement agencies would not have supplied such information to the FBI if they had known the information would be publicly disclosed; the Hardy Declaration also notes that the police report was about an open and ongoing investigation.  Id.

The Supreme Court has cautioned that "it is unreasonable to infer that all FBI criminal investigative sources are confidential."  Landano, 508 U.S. at 179.  To demonstrate an implied assurance of confidentiality, the FBI should point to "more narrowly defined circumstances that will support the inference," such as the nature of the investigation at issue.  Id.

In this case, the Court concludes that the FBI has met its burden of showing that the intelligence bulletin, police report, and gang member identification forms contained implied assurances of confidentiality.  The Hardy declaration explains, "we can infer that these law enforcement agencies [providing the documents] did not intend or expect that this cooperative exchange of detailed and singular law enforcement information and intelligence, which was provided to the FBI solely for purposes of furthering NGIC's research, would be publicly disclosed by the FBI."  Hardy Dec. ¶ 42; see also id. ¶ 43 (asserting that confidentiality must be maintained under the circumstances of the instant investigation to maintain confidential sources as a future means of obtaining information and to facilitate law enforcement inter-agency cooperation).  The Court finds this analysis persuasive, and concludes that the nature of the investigation — ongoing research into the possibly gang-related criminal activities of members of an organization — supports a conclusion that the state and local law enforcement agencies submitted the bulletins, identification forms, and police report under an implied assurance of confidentiality.  See Landano, 508 U.S. at 179 (noting that an investigation of a possibly gang-

related shooting was probative of an implied assurance of confidentiality).  The FBI has met its burden of showing that these materials are protected under Exemption 7(D).

### 4.  Exemption 7(E)

Finally, the FBI relied on FOIA Exemption 7(E) to withhold records that would reveal techniques, procedures, and guidelines for law enforcement and investigative techniques.  Hardy Dec. ¶ 45; Def. Br. at 26.

> Exemption 7(E) exempts from disclosure:
>
> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7)(E).

The Hardy declaration explains that describing the internal law enforcement techniques and guidance revealed by these records, including in the declaration or in the Vaughn index, "would expose the very information that the FBI has protected under Exemption 7(E)."  Hardy Dec. ¶ 45.  The Hardy Declaration also states that the FBI relied on Exemption 7(E) to withhold documents produced as a result of searching the Investigative Data Warehouse ("IDW"); the IDW is "a centralized repository for counterterrorism and investigative data that allows authorized users to query the information using advanced software tools."  Id.  ¶ 46.  The declaration asserts that disclosure of the printouts and reports would reveal how IDW data is organized and searched, which is an internal FBI technique.  Id.

The Court concludes that the FBI has met its burden of demonstrating that the records were properly withheld under Exemption 7(E), including an explanation of why further details regarding the internal law enforcement techniques may not be exposed in this litigation.  See

24

Jones v. FBI, 41 F.3d 238, 249 (6th Cir. 1994) (concluding that the FBI properly withheld, under Exemption 7(E), lawful investigative techniques not generally known to the public that could result in suspects' steps to avoid detection); American Civil Liberties Union of Michigan v. FBI, No. 11-13154, 2012 WL 4513626, at *9 (E.D. Mich. Sept. 30, 2012) (noting that no showing of harm is required for the withholding of law enforcement techniques or procedures, because such materials "receive categorical protection from disclosure" (citation omitted)).

Finally, the Court has reviewed the Vaughn index and concludes that the index sufficiently describes each document that was withheld or released in part and explains the exemptions applicable to each document or portion of a document. The index contains a reasonably detailed description of each document, including information such as the type of document, the date of the document, and a brief description of its substance. The documents that were withheld in full contain sufficient descriptions of the documents to clarify why each document as a whole was subject to a FOIA exemption. Furthermore, the Hardy declaration certifies:

> The FBI carefully examined the documents and determined that the information withheld from plaintiff in this case, if disclosed, could reasonably be expected to reveal information that is protected by the deliberative process privilege; would improperly invade personal privacy interests; would disclose the identities of confidential sources and the information provided by them; and/or would disclose techniques and procedures for law enforcement investigations. Documents that were withheld in full were determined to be wholly exempt based on Exemption 5 or 7(E), alone or in combination with the other cited exemptions, without any non-exempt information that could reasonably be segregated and released to plaintiff.

Hardy Dec. ¶ 47. The Court concludes that the FBI has sufficiently described "the process by which it determined that all reasonably segregable material had been released." Rugiero, 257 F.3d at 553.

25

Because the FBI has shown that the withheld documents were protected from disclosure by applicable FOIA exemptions, the Court grants the FBI's motion for summary judgment with respect to the withholding of records.

### V.   CONCLUSION

For the reasons stated above, the Court denies the FBI's motion for summary judgment with respect to the adequacy of the search and grants the FBI's motion with respect to the withholding of materials.

The Court further concludes that additional briefing is required as to how the case should proceed at this juncture.  Each party shall file a supplemental brief discussing this issue.  Plaintiff's supplemental brief is due on or before March 5, 2014.  The FBI's supplemental brief is due on or before March 12, 2014.  Each brief shall not exceed 10 pages, exclusive of attachments.

SO ORDERED.

Dated:  February 25, 2014                         s/Mark A. Goldsmith
      Flint, Michigan                            MARK A. GOLDSMITH
                               United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 25, 2014.

                               s/Deborah J. Goltz
                               DEBORAH J. GOLTZ
                               Case Manager