UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HERTZ SCHRAM PC,

    Plaintiff,

vs.

FEDERAL BUREAU OF INVESTIGATION,

    Defendant.

_____/

Civil Action No. 12-CV-14234

HON. MARK A. GOLDSMITH

## OPINION AND ORDER GRANTING DEFENDANT FEDERAL BUREAU OF INVESTIGATION'S SECOND MOTION FOR SUMMARY JUDGMENT (DKT. 38)

### I.  INTRODUCTION

This is a case arising under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Before the Court is Defendant Federal Bureau of Investigation's ("FBI") second motion for summary judgment (Dkt. 38). Plaintiff Hertz Schram PC has submitted a response, "defer[ring] to this Court's discretion as to whether Defendant has satisfied its obligations under the FOIA." Pl. Resp. at 2 (Dkt. 43). For the reasons discussed below, the Court concludes that the FBI has met its obligations under FOIA and, finding no genuine issue of material fact, grants the FBI's second motion for summary judgment.

### II.  BACKGROUND[1]

The resolution of this case turns on whether the FBI has adequately met its disclosure obligations in response to Plaintiff's FOIA request, which sought "any and all records, reports, notes, correspondence, witness statements[,] . . . studies and documents of any kind, in electronic

---

[1] A detailed description of the procedural history and background underlying this case is set forth in the Court's Opinion and Order granting in part and denying in part Defendant's first motion for summary judgment. See 2/25/2014 Op. and Order (Dkt. 33).

and hard copy format . . . regarding the investigation and determination to include the identification of the 'Juggalos' as a 'gang' in the National Gang Intelligence Center's [2011 report]," including information that supported 12 specific statements contained within that report. FOIA Request at 2-3 (cm/ecf page) (Dkt. 26-3). The FBI filed a first amended motion for summary judgment, arguing that it had fully discharged its disclosure obligations under FOIA. Def. First. Am. Mot. for Summ. J. (Dkt. 26). In support of its motion, the FBI included the declaration of David M. Hardy, in which he described the FBI's search for responsive documents, Hardy Decl. (Dkt. 26-2), and a Vaughn index, explaining why certain responsive documents were redacted or withheld from the FBI's production to Plaintiff. Vaughn Index (Dkt. 26-9).

Following briefing and a hearing on the FBI's motion, the Court issued an Opinion and Order: (i) granting the FBI's motion with respect to the FBI's withholding of certain documents under the enumerated FOIA exemptions, and (ii) denying the FBI's motion with respect to the adequacy of the FBI's search for documents responsive to Plaintiff's FOIA request. 2/25/2014 Op. and Order at 1 (Dkt. 33). The Court also directed the parties to submit supplemental briefing as to how the case should subsequently proceed. Id. at 26.

In its supplemental brief, the FBI proffered the declaration of Diedre D. Butler, Unit Chief of the National Gang Intelligence Center ("NGIC"), to "address[] the Court's concerns regarding the adequacy of the search conducted in response to plaintiff's FOIA request." Def. Supp. Br. at 1 (cm/ecf page) (Dkt. 36). The FBI also requested leave to file a second motion for summary judgment. Id. at 2 (cm/ecf page). The Court granted the FBI's request. 4/9/2014 Order (Dkt. 37).

### III.   ANALYSIS

"To prevail on summary judgment, the government must show that it made a 'good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information . . . .'" Rimmer v. Holder, 700 F.3d 246, 255 (6th Cir. 2012) (quoting CareToLive v. Food & Drug Admin., 631 F.3d 336, 340 (6th Cir. 2011)).  "At all times the burden is on the agency to establish the adequacy of its search," although it "may rely on affidavits or declarations that provide reasonable detail of the scope of the search." Rugiero v. U.S. Dep't of Justice, 257 F.3d 534, 547 (6th Cir. 2001).  Furthermore, "[i]n the absence of countervailing evidence or apparent inconsistency of proof, [such affidavits] will suffice to demonstrate compliance with the obligations imposed by the FOIA." Id. (alteration in original) (quoting Bennett v. Drug Enforcement Admin., 55 F. Supp. 2d 36, 39 (D.D.C. 1999)) (internal quotation marks omitted).  This standard comports with the traditional notion that to defeat a motion for summary judgment, "the non-movant must show sufficient evidence to create a genuine issue of material fact," id. at 543, and "on which the jury could reasonably find for the [non-movant]." Id. (alteration in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (internal quotation marks omitted).

The Court denied the FBI's first amended motion for summary judgment with respect to the adequacy of the search for two reasons: (i) the Hardy Declaration did not adequately describe the FBI's search for records responsive to Plaintiff's FOIA request; and (ii) the FBI misconstrued Plaintiff's FOIA request, and therefore failed to conduct a reasonably tailored search for responsive documents.  2/25/2014 Op. and Order at 6-7.  For the reasons that follow, and because Plaintiff does not dispute any of the factual allegations set forth in the Butler

Declaration, the Court finds that there is no genuine issue of material fact as to whether the FBI has conducted an adequate search for material responsive to Plaintiff's FOIA request.

### A. The FBI's Description of the Search

The Court previously found that, while the Hardy Declaration sufficiently described the FBI's search for responsive material within the FBI's Central Record System ("CRS"), it did not adequately describe the NGIC's search for responsive records. Id. at 11. Specifically, the Court concluded that the Hardy Declaration did "not describe how the NGIC organized or searched its files," id. at 12, nor did it describe the methods and procedures the NGIC used to process and respond to the request. Id. The Court now concludes that the FBI has remedied these defects with its submission of the Butler Declaration.

In the Declaration, Diedre Butler states that, upon being contacted by the FBI's Record/Information Dissemination Section ("RIDS"), Butler contacted "the analyst who gathered intelligence about Juggalos and wrote that portion of the 2011 NGIC Report to obtain the records and information he compiled." Butler Decl. ¶ 8(a) (Dkt. 38-1). According to Butler, the analyst had "saved all of his materials in hard copy in a file folder." Id. The "file folder contained the 156 pages of material that were processed for release to plaintiff in this case," and the "NGIC provided the contents of the file folder to RIDS for processing." Id. Butler further states that no "separate electronic search of network files or e-mails" was conducted, "because the analyst who wrote the Juggalos portion of the NGIC Report had reduced the materials he compiled to hard copies, all of which he kept in the file folder that was provided to RIDS for processing." Id. ¶ 8(b). The Butler Declaration also indicates that "[t]he analyst considered and relied exclusively on the information contained in the [] file folder in drafting the Juggalos portion of the NGIC Report." Id. ¶ 8(c).

4

The Butler Declaration provides reasonable detail as to the scope and procedure for the NGIC's search for responsive material. Not only does the Declaration describe how the NGIC located potentially responsive material, but it also gives sufficient information as to how the material was stored and processed, as well as to how the NGIC ensured that its search adequately responded to the request. Thus, the Court concludes that the FBI has sufficiently described the NGIC's search for records responsive to Plaintiff's FOIA request.

### B. The Scope of the FBI's Search for Responsive Documents

The Court also previously found "that the FBI misinterpreted Plaintiff's FOIA request and, therefore, conducted a search that was not responsive to Plaintiff's request." 2/25/2014 Op. and Order at 12. Specifically, the FBI interpreted the FOIA request to seek only information "on which the NGIC relied in classifying the Juggalos as a gang in the 2011 report." Id. However, the Court concluded that Plaintiff's FOIA request encompassed information beyond that subset of documents. For instance, the request encompassed material that may have "weigh[ed] against classifying the Juggalos as a gang," and information concerning "the investigation of the Juggalos in preparation for the 2011 report, but on which the NGIC did not actually rely in preparing the report or classifying the Juggalos as a gang." Id. at 13 (emphasis in original). In addition, the FBI interpreted the request as limited to only those records dated prior to the 2011 report. Id. at 14-15. However, because Plaintiff requested information dating from 2007 to the present, the Court found that the request encompassed relevant documents concerning the investigation and classification of the Juggalos as a gang dated after the 2011 report. Id. at 15.

The Butler Declaration provides additional detail concerning the nature of the NGIC, its bi-annual reports, and the decision to include the Juggalos in the 2011 iteration of the report that allows the Court to now conclude that the FBI's search was reasonably tailored to Plaintiff's

5

request. The Butler Declaration first emphasizes that Plaintiff's FOIA request "did <u>not</u> seek all FBI records regarding Juggalos," but "was limited to . . . those records regarding 'the investigation and determination to include the identification of the Juggalos as a gang in the [2011 NGIC report].'" Butler Decl. ¶ 6 (emphasis in original). The Butler Declaration further states that "there was no FBI investigation of the Juggalos for suspected gang activity in preparation for the 2011 NGIC Report, and no FBI investigation otherwise underlying the decision to include the identification of Juggalos as a gang in the 2011 NGIC Report." <u>Id.</u> ¶ 7. The Butler Declaration goes on to characterize the NGIC "as a repository and dissemination hub for gang intelligence." <u>Id.</u> ¶ 7(b). It regularly receives information and intelligence from law enforcement partners and, using that information, "identifies 'hot topics' to include in [its] bi-annual reports." <u>Id.</u> ¶ 7(b)-(c). The Butler Declaration notes that, based on information the NGIC had received from law enforcement partners, the topic of "gang-like behavior by certain subsets of Juggalos" was "trending." <u>Id.</u> ¶ 7(d). Consequently, the NGIC "solicited additional information" from states about the topic, and subsequently reported on that topic in its 2011 report. <u>Id.</u>

According to the Butler Declaration, upon receipt of the request, Butler contacted "the analyst who gathered intelligence about Juggalos and wrote that portion of the 2011 NGIC Report to obtain the records and information he compiled." <u>Id.</u> ¶ 8(a). That analyst considered only the material contained in the hard-copy file folder transferred to RIDS and "did not consider or rely on any FBI-generated investigative information or records in drafting the Juggalos portion of the Report." <u>Id.</u> ¶ 8(c). The Declaration further states that the file folder transferred to RIDS contained "information provided by state and local law enforcement officials who reported that their jurisdictions did <u>not</u> officially recognize Juggalos as [a] gang, as well as information

6

provided by state and local law enforcement officials whose jurisdictions recognized Juggalos as a gang." Id. ¶ 8(d) (emphasis in original). The Butler Declaration also notes that the "NGIC does not maintain any records regarding or reflecting comments or criticisms on the Juggalos portion of the published 2011 NGIC Report received either before or after the report was published." Id. ¶ 9.

The Court agrees with the FBI that Plaintiff's FOIA request is anchored in the 2011 NGIC report. Plaintiff requested documents "regarding the investigation and determination to include the identification of the 'Juggalos' as a 'gang' in the [NGIC's 2011 Report], including, but not limited to," information supporting specific statements contained within the report. FOIA Request at 2 (cm/ecf page). The syntax of the request suggests that the reference to "investigation" is limited to any investigation associated with or underlying the NGIC's decision to include the Juggalos in the 2011 report. However, the Butler Declaration provides that there was no such investigation into the Juggalos for the purpose of the 2011 report. And, it is reasonable to conclude that any FBI investigation of the Juggalos that is separate and distinct from the NGIC 2011 report, and on which the NGIC did not rely in preparing the report, does not fall within the scope of the request. Accordingly, the failure to search for and produce documents regarding any investigation into the Juggalos does not render the FBI's search deficient under FOIA.

Furthermore, the Butler Declaration indicates that the NGIC uses information it receives from state and local law enforcement agencies to identify emerging trends in gang activity and, in this case, when it identified Juggalos as one such trend, it solicited additional information on the topic from state and local agencies. Using the information received by state and local agencies, as well as open-source reporting, the NGIC then reported on the Juggalos in its 2011

report. Given the NGIC's role in producing the report, it was reasonable for the FBI to go directly to the analyst who researched and authored the Juggalos portion of the 2011 report for the materials used in preparation of that report. It appears that the file folder contained all of the materials compiled for the 2011 report, as well as all the information retained by the NGIC with respect to the Juggalos portion of the report. Because the analyst compiled and relied exclusively on the materials contained in the hard-copy file folder, the contents of the folder would have contained all of the information concerning the Juggalos for the report, including information in favor of characterizing the Juggalos as a gang, as well as information that weighed against characterizing the Juggalos as such. Although the NGIC did not conduct an additional and separate search of hard-copy documents beyond those contained in the file folder, or a search for electronic documents responsive to Plaintiff's request, "[t]here is no requirement that an agency search every record system." Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). The Butler Declaration reasonably established that "no other record system was likely to produce responsive documents." Id.

Finally, the Butler Declaration notes that the NGIC does not retain or maintain records about any commentary received in response to the inclusion of the Juggalos in the 2011 report, nor does it affirm or negate any of the information or intelligence it received concerning the Juggalos. Therefore, it is reasonable to conclude that the NGIC would not be in possession of information related to the inclusion of the Juggalos in the 2011 report that is dated subsequent to the report.

In light of the additional information provided by the Butler Declaration, it appears that the FBI's search was reasonably responsive to Plaintiff's request. Given the process by which the NGIC made the determination to include the Juggalos in the report, and the types of materials

relied upon by the analyst who authored that portion of the report, the Court concludes that the FBI's search was "reasonably calculated to discover the requested documents." CareToLive, 631 F.3d at 340 (quoting Grand Cent. P'ship v. Cuomo, 166 F.3d 473, 489 (2d Cir. 1999)) (internal quotation marks omitted). There is no countervailing evidence to suggest otherwise. Therefore summary judgment is appropriate. Rugiero, 257 F.3d at 549.

## IV. CONCLUSION

For the reasons stated above, the Court grants the FBI's second motion for summary judgment (Dkt. 38).

SO ORDERED.

Dated: November 5, 2014
      Detroit, Michigan

s/Mark A. Goldsmith
MARK A. GOLDSMITH
UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 5, 2014.

s/Johnetta M. Curry-Williams
JOHNETTA M. CURRY-WILLIAMS
CASE MANAGER