UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HERTZ SCHRAM PC,

No. 12-14234

Plaintiff,

District Judge Mark A. Goldsmith

v.

Magistrate Judge R. Steven Whalen

FEDERAL BUREAU OF INVESTIGATION,

Defendant.

_____ /

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff's Hertz Schram PC's ("Plaintiff's") motion for attorney fees [Doc. #47], which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that Plaintiff's motion be DENIED.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On September 25, 2012, Plaintiff, a law firm located in Oakland County Michigan, filed an action for injunctive relief under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(B), against the Federal Bureau of Investigation ("FBI").[1]

Plaintiff alleged that it made a FOIA request by electronic mail on August 24, 2012

_____

[1] The Complaint also lists Psychopathic Records, Inc. and Insane Clown Posse, LLC as Plaintiffs. Parties stipulated to the dismissal of those parties on December 5, 2012. *Docket #13.*

-1-

asking "for various documents from the FBI pertaining to its classification of the followers ("Juggalos") of the musical duo Insane Clown Posse LLC ("ICP") as a "'gang.'" *Complaint,* ¶¶ 7, 9-11.  *Exhibit 1.*   Plaintiff alleged that in 2011, the FBI issued *2011 National Gang Threat Assessment Emerging Trends* (the "Report") classifying Juggalos as a gang.  *Id.* at ¶ 10.  Plaintiff alleged that the FBI acknowledged receipt of the request on August 27, 2012. *Id.* at ¶ 12.   Plaintiff stated that it filed the present action on September 25, 2012 after Defendant failed to respond to the request for records within 20 working days as required by 5 U.S.C. ¶ 552(a)(6)(A)(I).  *Id.* at ¶¶ 13-15.  Plaintiff requested that the FBI be ordered to disclose the requested documents "in their entireties and make copies available to Plaintiff[]." *Id.* at pg. 3.

On February 25, 2014, the District Court granted in part and denied in part the FBI's motion for summary judgment.  *Order, Docket #33.*   In denying the motion in part, the Court found (1) the FBI failed to adequately describe its search for records responsive to Plaintiff's FOIA request and, (2) the FBI misinterpreted the Plaintiff's FOIA request, thereby failing to conduct an adequate search for responsive documents.  *Id.* at 6-16. However, The Court found that the FBI had met its burden of showing that the withholding of certain documents fell within FOIA exemptions.  *Id.* at 16-26.

On March 13, 2014, Defendant submitted the Declaration of Diedre D. Butler, Unit Chief of the National Gang Intelligence Center ("NGIC").  *Docket #36.*   On November 5, 3014, the District Court granted the FBI's renewed motion for summary judgment, finding that the Butler Declaration provided "reasonable detail as to the scope and

procedure for the . . . search for responsive material" and provided "additional detail" concerning the interpretation of the FOIA request.  *Order, Docket #45, 4-9,  Docket 38.*

In response to the renewed motion for summary judgment, Plaintiff declined to challenge the Butler Declaration but stated that it reserved its right to seek attorney fees as a substantially prevailing party under 5 U.S.C. § 552(a)(4)(E)(I).  *Docket #43,* 1-2.

## II.  APPLICABLE LAW

Under the FOIA, "every federal agency shall promptly make available upon request records reasonably described." *Rugiero v. U.S. Dept. of Justice,* 257 F.3d 534, 543 (6th Cir. 2001); 5 U.S.C. § 552(a)(3)(A).  "[A]n agency may not withhold or limit the availability of any record, unless one of the FOIA's specific exceptions applies. *Id.* ; § 522(d). These exceptions, narrowly construed, place the burden "on the agency to justify its action." *Id.*; § 552(a)(4)(B).

"[D]istrict courts typically dispose of FOIA cases on summary judgment before a plaintiff can conduct discovery," as a result of which, "a plaintiff must argue that the agency's withholdings exceed the scope of the statute, although only the agency is in a position to know whether it has complied with the FOIA. . . ."  *Rugiero* at 544 ( citing *Jones v. FBI,* 41 F.3d 238, 242 (6th Cir.1994)).  While the Act "authorizes courts to examine documents *in camera* when reviewing the propriety of an agency's withholdings," the Sixth Circuit "encourages use of [such] review sparingly, when no other procedure allows review of the agency's response to a FOIA request." *Rugiero* at 543-544 (citing *Ingle v. Department of Justice,* 698 F.2d 259, 267 (6th Cir.1983)); § 552(a)(4)(B).

-3-

The FOIA states that a court "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." § 552(a)(4)(E)(I). Under the statute, the complainant has "substantially prevailed" if he/she "has obtained relief through either (I) "a judicial order, or an enforceable written agreement or consent decree" or (II) "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." § 552(a)(4)(E)(ii)(I-II). Even if the complainant has not "obtain[ed] a court order compelling the agency to produce requested documents, it still will have substantially prevailed if it demonstrates that the prosecution of the lawsuit was reasonably necessary to  obtain requested information, and that the existence of the lawsuit had a causative effect upon the release of that information." *GMRI, Inc. v. E.E.O.C.* 149 F.3d 449, 451 -452 (6th Cir. 1998)(*citing Miller v. United States Dep't of State,* 779 F.2d 1378, 1389 (8th Cir.1985)).  If the complainant is found eligible for fees under the above factors, "the Court determines then whether the plaintiff is entitled to such an award based upon a balancing of equitable considerations."  *GMRI,* at 451.

"In determining whether a prevailing FOIA complainant is entitled to attorneys' fees, a district court should consider at least the following factors: 'the benefit to the public deriving from the case; the commercial benefit to the complainant and the nature of its interest in the records; and whether the agency's withholding had a reasonable basis in law.'" *Detroit Free Press, Inc. v. Department of Justice,* 73 F.3d 93, 98 (6th Cir. 1996)(*citing American Commercial Barge Lines Co. v. N.L.R.B.*, 758 F.2d 1109, 1111 (6th

Cir.1985)).  "Congress' use of the word 'may' in § 522(a)(4)(E) indicates that it 'left to the traditional equitable discretion of the trial court the decision whether such fees should be awarded in any particular case.'" *GMRI,* 149 F.3d at 451 (*citing Miller,* 779 F.2d at 1389).

## III.   DISCUSSION

Plaintiff Hertz Schram requests $18,336.00 in attorney fees.  *Motion, Docket #47.* In support of its claim, Plaintiff contends that the lawsuit was reasonably necessary and that it "substantially prevailed."  Plaintiff also argues that the "equitable" factors to be considered in awarding attorney fees tip in its favor.  *Id.* at 4 (*citing GMRI, Inc. v. EEOC,* 149 F.3d 449, 451 (6th Cir. 1998)).

Defendant FBI disputes Plaintiff's eligibility and entitlement to fees, arguing first that "as a law firm representing itself," Plaintiff is not eligible for an award of fees. *Response,* 6-9, *Docket #49.*  Second, Defendant disputes that Plaintiff "substantially prevailed," noting Defendant did not "voluntarily or unilaterally change its position" in response to the suit.  *Id.* at 13.  Defendant notes that Plaintiff "jumped the gun" by filing suit before the end of the 20-day period for responding to FOIA requests.  *Id.* at 11; 5 U.S.C. § 552 (a)(6)(A)(I).  Defendant points out that its decision to withhold certain documents was upheld by the District Court.  *Id.* at 13.  Defendant argues further that even if the Court were to find that Plaintiff "substantially prevailed," the equitable factors to be considered weigh against an award of attorneys fees.  *Id.* at 14-22.  Finally, Defendant argues that the attorney fees sought by Plaintiff are unreasonable.  *Id.* at 23-25.

In its reply, Plaintiff disputes the contention that it is not entitled to attorney fees

because it is a law firm, but does not address the Defendant's argument that it did not wait for the 20-day period permitted for response before filing suit or that its challenge to the FBI search yielded no additional documents. *Reply, Docket #52.*

### A. Plaintiff's Representation by Members of Its Own Organization Does not Preclude Attorney Fees.

Defendant relies on *Falcone v. IRS,* 714 F2d 646 (6th Cir. 1983), in support of its contention that a law firm representing itself in a FOIA action does not qualify for an award of attorney fees. *Response,* 6-8.

In *Falcone,* the Court rejected the claim by the *pro se* attorney-complainant that he was entitled to fees. Relying on *Wolfel v. United States,* 711 F.2d 66 (6th Cir.1983), the Court held that the rule that *pro se* complainants were not entitled to attorney fees "applies to *pro se* FOIA plaintiffs who also happen to be attorneys." *Falcone,* at 646. The Court reasoned further that because the FOIA's attorney fee provision was designed to encourage "retention of legal counsel . . . to prevent unnecessary litigation," an attorney "who represents himself in litigation may have the necessary legal expertise but is unlikely to have the 'detached and objective perspective' necessary to fulfill the aims of the Act." *Id.* at 647 (*citing White v. Arlen Realty & Development Corp.,* 614 F.2d 387, 388 (4th Cir. 1980). "The fortuitous fact that such a FOIA plaintiff is also an attorney makes no difference. Both a client and an attorney are necessary ingredients for an award of fees in a FOIA case." *Id.* at 648.

Defendant also cites *Burka v. HHS,* 142 F.3d 1286, 1290 (D.C. Cir. 1998), in which

the D.C. Circuit held that an attorney-litigant in a FOIA action was not eligible for fees where the legal services were performed by other attorneys in the same law firm. *Response* at 7; *Burka,* at 1291-1292 (*citing Kay v. Ehrler*, 499 U.S. 432, 435 fn. 4, 111 S.Ct. 1435, 1436, 113 L.Ed.2d 486 (1991)(no attorney fees rule for *pro se* attorney in 42 U.S.C § 1988 case applies to FOIA).

In contrast, Plaintiff relies on a more recent D.C. Circuit case in which the Court found that because counsel had an "attorney-client" relationship with the law firm "organization" for whom he worked, attorney fees were permitted. *Baker & Hostetler LLP v. U.S. Dept. of Commerce,* 473 F.3d 312, 324-326 (D.C. Cir. 2006). In *Baker,* the Court relied on dicta from *Kay,* 499 U.S. at 436, fn. 7, which distinguished a *pro se* attorney-litigant representing himself from counsel representing the entity for whom he worked. "[A]n organization is not comparable to a pro se litigant because the organization is always represented by counsel, whether in-house or pro bono, and thus, there is always an attorney-client relationship. *Baker,* at 325 (citing *Kay*).  In awarding attorney fees to the complainant law firm, the *Baker* Court reasoned as follows:

> "In explaining that organizations may recover fees when represented by in-house counsel, [*Kay*] did not distinguish between law firms and other types of organizations. Nor can we see any principled basis for making such a distinction. Footnote 7 suggests that an in-house counsel for a corporation is sufficiently independent to ensure effective prosecution of claims, thus justifying fees. An attorney who works for a law firm certainly is no less independent than an attorney who works for a corporation. Therefore, it would make little sense to slice and dice *Kay's* conclusion regarding 'organizations' and apply footnote 7 to some organizations but not others."

*Baker,* at 325.

*Baker's* reasoning is applicable here.  None of the three attorneys of record is a named Plaintiff.  While all of the individual attorneys work in some capacity for Plaintiff Hertz Schram PC, only the professional corporation was included in the caption.  *Falcone,* in which the individual attorney seeking fees was also the named Plaintiff, is distinguishable.  Whereas in *Falcone,* the Court found that the attorney-litigant  would  lack the objectivity to effectively pursue a FOIA claim on his own behalf, the attorneys in the present case are acting, as in *Baker,* as "in-house counsel" for the corporation.  *Baker,* 325.  " [A]n organization cannot be a pro se litigant because it is always represented by counsel, be it in-house or other." *Public Employees for Environmental Responsibility v. U.S. Intern. Boundary and Water Com'n,*  968 F.Supp.2d 85, 87 (D.D.C. 2013)(*citing Baker,* at 324-326). Moreover Defendant does not dispute that Plaintiff is entitled to hire attorneys on behalf of its interests; the fact that the "hired" attorneys work from within the corporation rather than another entity does not change the result.

**B.  However, Plaintiff Has Not Shown That it Substantially Prevailed.**

**1.  Plaintiff Filed Its Complaint Prematurely**

In support of its claim that it substantially prevailed, Plaintiff argues that it filed suit after waiting nine days beyond the 20-day period statutory period for Defendant to respond to the FOIA request.  *Motion* at 5-6.  Plaintiff contends that the action was   "reasonably necessary" to obtain the requested information "because there was  no indication that Defendant intended to respond" to the FOIA

request. *Id.* at 5.

In response, Defendant notes that Plaintiff's claim that it waited until the 29th day after the request is based on an erroneous reading of the applicable statute, and that Plaintiff filed its Complaint before the end of the 20th day. *Response* at 10-13; § 552 (a) (6)(A)(I). Defendant notes that in fact, it responded to the FOIA request before the end of the 20th day. *Id.*

A FOIA requester is generally required to exhaust administrative appeal remedies before seeking judicial redress. *Citizens for Responsibility and Ethics in Washington v. Federal Election Com'nmg,* 711 F.3d 180, 184, (D.C. Cir. 2013); *Hidalgo v. FBI,* 344 F.3d 1256, 1258–59 (D.C.Cir. 2003). Upon receiving a FOIA request, a federal agency shall "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination. . ." 5 U.S.C. § 552 (a) (6)(A)(I-ii). "If on [administrative] appeal the denial of the request for records is in whole or in part upheld, the agency shall notify the person making such request of the provisions for judicial review." § 552 (a) (6)(A)(ii).

In addition, § 552(a)(6)(B)(I) states that "[i]n unusual circumstances as specified in this subparagraph, the time limits prescribed in either clause (I) or clause (ii) of subparagraph (A) may be extended by written notice to the person

-9-

making such request setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched."   "If an agency fails to make and communicate its 'determination' whether to comply with a FOIA request" within the above-stated time frame, "the requester 'shall be deemed to have exhausted his administrative remedies.'" *Citizens,* 711 F.3d at 184; 5 U.S.C. § 552(a)(6)(C)(I).

Plaintiff concedes that the FBI acknowledged receipt of the FOIA request on August 27, 2012. *Motion* at 2.   Plaintiff, citing the 20-day rule under § 552 (a) (6)(A)(I), states that it "waited 29 days for response from the FBI, but received nothing" before filing suit on September 25, 2012. *Id.* at 6.   Plaintiff position that the 20-day period had expired when it filed suit relies on an erroneous interpretation of the statute. The 20-day rule excludes "Saturdays, Sundays, and legal public holidays." § 552 (a) (6)(A)(I).   Plaintiff's computation of the time does not. Excluding weekends and holidays, Plaintiff filed suit prematurely on September 25, 2012, the 20th day after the FBI's receipt of the request. Notably, Plaintiff's time sheets state that counsel was performing legal research for the FOIA lawsuit as early as September 20, 2012.   Moreover, Plaintiff did not wait until the end of the 20th work day, but instead, filed its Complaint at 8:52 a.m on September 25. *Docket #1.*   At some point on the same day, Defendant informed Plaintiff by email that it was currently "searching . . . for information responsive to [the FOIA] request."   *Amended Motion for Summary Judgment, Docket #26, Exhibit C.*

-10-

Defendant states that when it was served with the lawsuit on October 3, 2012, it was "already working on" the FOIA request[] pursuant to its standard FOIA processing protocol." *Response* at 13*, Exhibit #1, David M. Hardy Declaration* at ¶ 7.

To be sure, Defendants did not raise the issue of Plaintiff's failure to exhaust its administrative remedies until now. Further, Defendant's September 25, 2012 email stating that it was conducting a search for responsive documents does not appear to satisfy requirements for tolling the 20-day period under "unusual circumstances." *See § 552(a)(6)(B)(I)(* "In unusual circumstances" the 20-day period for responding "may be extended by written notice . . setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched"). Defendant's September 25, 2012 correspondence that it was searching for documents does not mention the date on which a determination would be made or the "unusual circumstances" warranting an extension. Nonetheless, for the purposes of the present motion, Plaintiff's failure to wait 20 days required by the statute to file its Complaint undermines its position that it was "reasonably necessary" to file a FOIA action to obtain the requested material. *See Weisberg v. U.S. Dept. of Justice,* 745 F.2d 1476, 1497 (D.C. Cir. 1984)(the complainant's failure to wait 20 days after receipt of the request before filing suit stands at odds with his claim that the lawsuit was necessary to procure the requested information).

**2.  Plaintiff Cannot Otherwise Show That the Action Had a "Causative Effect" or was Reasonably Necessary to Obtain the Requested Documents**

Plaintiff argues that the FOIA action was "reasonably necessary" to obtain the requested information "because there was no indication that Defendant intended to respond" to the FOIA request "in a manner compliant with the FOIA." *Motion* at 5-6.  Plaintiff notes that the FBI did not provide "a substantive response" to its FOIA request until "over two months after its response was due." *Id.* at 6. Plaintiff cites *Miller, supra,* 779 F.2d at 1389 (award of fees appropriate where "persistent litigation . . . was the principal cause of the Department's eventual diligence in releasing" the requested information) in support of the position that its Complaint precipitated the release of information.  *Id.*

In response, Defendant cites the *Hardy Declaration* stating that it had already begun its search as of the time of the lawsuit "and continued its efforts until all responsive records were located and processed[] and all non-exempt information was released to plaintiff."  *Response, Exhibit 1, Hardy Declaration* at ¶ 8.  The Declaration states further that "[a]ny delay in production was due to the time it took to identify and review the responsive records for protected information." *Id.*  The Declaration also states that the 102 pages released to Plaintiff consisted in large part of "public source material" and that the remaining documents "consisted of . . . non-substantive" material.  *Id.* at ¶ 9.

Plaintiff cannot establish a causal connection between the filing of the

Complaint and the release of the information.  "[T]he mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation." *Weisberg, supra,* 745 F.2d 1476, 1496 (D.C. Cir. 1984).  In *Weisberg,* the Court vacated a lower court finding that the plaintiff had substantially prevailed, holding that the release of more than 50,000 pages after the FOIA action was filed  did not by itself support a finding that the plaintiff had "substantially prevailed."  The D.C. Circuit  noted that the lower court had not considered whether the significant delay in the release of documents was  attributable to an administrative "backlog" rather than an attempt to stonewall the plaintiff's requests.  *Id.* at 1497.  The Court also observed that the plaintiff did not exhaust his administrative remedies by waiting to file suit until after 20 days after making one of the FOIA requests, noting that the premature filing undermined his claim that filing suit was necessary to obtain the requested material.  *Id.* at 1496.  Likewise here, Plaintiff has not established that the December, 2012 and January, 2013 release of the requested information was precipitated by the September 25, 2012 filing.  The Hardy Declaration states (1) the request was already being processed at the time of the lawsuit and, (2) the request (delayed by the high volume of FOIA requests) was processed on a "on a first-in, first-out" basis.  *Id.* at ¶¶  5-7.

Of equal importance is the fact that Plaintiff did not receive any additional documents as a result of its opposition to Defendant's earlier motion for summary judgment.  To be sure, on February 25, 2014, the District Court  denied in part the

-13-

FBI's motion for summary judgment. *Order, Docket #33.* The Court found that the FBI had met its burden of showing that the withholding of certain documents fell within FOIA exemptions, *Id.* at 16-26, but denied the motion in part because (1) the FBI failed to adequately describe its search for records responsive to Plaintiff's FOIA request and, (2) misinterpreted the Plaintiff's FOIA request, thereby failing to conduct an adequate search for responsive documents. *Id.* at 6-16.

However, Defendant filed a renewed motion for summary judgment, continuing to defend its original position that its document search was responsive to Plaintiff's request. In the renewed motion, Defendant submitted the Declaration of Diedre D. Butler, Unit Chief of NGIC, which provided an explanation for Defendant's description of its search and its interpretation of the FOIA request. *Docket #36, 38.*

On November 5, 3014, the District Court granted the FBI's renewed motion for summary judgment, finding that the Butler Declaration provided "reasonable detail as to the scope and procedure for the . . . search for responsive material" and provided "additional detail" concerning the interpretation of the FOIA request. *Order,* 4-9, *Docket #45.* Specifically, the District Court stated that the FBI "remedied" its previous defects in describing "the methods and procedures used to process and respond to the [FOIA] request." *Order, Docket #45* at 4. The Court concluded that "[i]n light of the additional information provided by the Butler

-14-

Declaration, it appears that the FBI's search was reasonably responsive to Plaintiff's request." *Id.* at 8.

Plaintiff cannot show that Defendant "changed position" as a result of either the filing of the lawsuit or Plaintiff's opposition to the earlier motion for summary judgment. While the District Court initially denied in part Defendant's motion for summary judgment, the Court later granted the renewed motion after Defendant provided additional support for its original position. Because the Butler Declaration amounts to clarification of Defendant's ultimately successful position (rather than a change in position), Plaintiff cannot show that it substantially prevailed. *See Terris, Pravlik & Millian, LLP v. Centers for Medicare & Medicaid Services,* 794 F.Supp.2d 29, 34 -35 (D.D.C. 2011)("Unfortunately for [the plaintiff], there is no evidence whatsoever that CMS ever changed its position after TPM sued. To the contrary, the only available evidence establishes that the disclosure was the product of the administrative process functioning in its ordinary manner").

### C.  The Equitable Factors Do Not Support an Entitlement to Fees

Plaintiff has not shown that the equitable factors consisting of (1) "'the benefit to the public deriving from the case,'" (2) "'the commercial benefit to the complainant'" and, (3) "'whether the agency's withholding had a reasonable basis in law'" support an entitlement to fees. *Detroit Free Press, supra,* 73 F.3d at 98 (*citing American Commercial Barge Lines, supra,* 758 F.2d at 1111).

-15-

### 1. Benefit to the Public

Plaintiff argues that the release of the records benefits the public because it is a "vindication of the FOIA." *Motion* at 8. Plaintiff cites *Comer v. I.R.S.,* 2002 WL 31835437 (E.D.Mich. October 30, 2002)(Cleland, J.), which stated:

> "The Court finds that this case provided a distinct benefit to the public. The public has a unique interest in the enforcement and vindication of the FOIA. Each time an agency disregards its obligation to diligently answer and provide information in response to FOIA requests, the public is harmed. In the same sense, the public interest is served when, as in the case at bar, a court refuses to condone the agency's behavior by ignoring its unreasonable conduct."

*Comer,* at *2 (*citing Dixie Fuel Co. v. Callahan,* 136 F.Supp.2d 659, 664 (E.D.Ky.2001)).

However, both *Comer* and *Dixie Fuel* are distinguishable from the present case. While in *Comer,* the Court noted that the four-year litigation leading to the release of documents was "protracted," here, the documents were released within a relatively short time after the lawsuit was filed. Present Defendant did not disregard its obligation to provide the requested material and the District Court ultimately found Defendant's actions were reasonable. In *Dixie,* the court noted that Plaintiff filed suit after waiting over six months after making the FOIA requests. In contrast here, Plaintiff did not wait for even 20 working days after making its request to file suit. In contrast to *Comer* and *Dixie,* the lawsuit did not vindicate the policies underlying the FOIA.

Plaintiff argues that the FOIA request was made in relation to an injunctive action brought on behalf of the Juggalos, who were allegedly "harmed by the FBI's erroneous gang designation." *Motion* at 9; *See Parsons, supra,* Case No. 14-10071. In response,

-16-

Defendant argues that "the plaintiffs in that lawsuit," rather than the public, "are the potential beneficiaries of the released records, not the general public." *Response* at 17. Defendant notes that Plaintiff "does not even address whether the specific documents it obtained provide any value to the public." *Id.* at 16.

Defendant's contention that *Parsons'* challenge to "content based regulation" in violation of the First Amendment has "little if any relevance to the making of political choices by citizens, is not well taken. Nonetheless, because Plaintiff has not shown that its premature filing vindicated the FOIA or that the same information could have been procured without filing suit, this factor weighs against an award of fees.

### 2. Commercial Benefit to Plaintiff

Plaintiff argues that it had a "non-commercial interest" in procuring the requested documents because the released information was not "sold or used for any other overt purpose. . ." *Motion* at 9-10. In response, Defendent contends that Plaintiff had "an adequate private incentive to litigate its FOIA demand even in the absence of an award of attorney fees." *Response* at 19-20 (*citing Davy v. CIA*, 550 F.3d 1155, 1160 (D.C. Cir. 2008)( requesters seeking documents for private advantage "cannot deserve a subsidy" where a private interest created an incentive to litigate).

Plaintiff's motivation in making the FOIA request was chiefly commercial. The named plaintiffs in *Parsons* are represented by the current Plaintiff. *Parsons,* Case No. 14-10071. The two individuals comprising the musical duo ICP, Joseph Bruce and Joseph Utsler, are included among the *Parsons* plaintiffs. The action disputes the Juggalos' gang

designation, alleges incidents involving Juggalos from 2012 forward, and in particular, protests the Royal Oak Music Theater's 2012 decision to cancel an ICP concert because of the Juggalos' gang designation. *Parson's Complaint* at ¶¶ 196-199.   The Complaint appears to cite information released in the FOIA request. *Id.* ¶¶ 107-149.  As a law firm representing the members of ICP, Plaintiff had ample private incentive to make the requests on behalf its clients.

### 3.  The FBI's Withholding of Certain Records Was Reasonable

For the reasons set forth above, Defendant's withholding of some of the records was reasonable.  In support of this factor, Plaintiff argues that Defendant's failure to respond within 20 days had no reasonable basis.  Again, however, this argument is undermined by the fact that Plaintiff filed suit prior to the end of the 20th day allowed under the statute for responding to FOIA requests.  Further, Plaintiff does not dispute that the District Court rejected its claim that it was entitled to additional information or the Court's finding that all of the withheld material was authorized under the FOIA.  While  the release of information extended to January, 2014, Defendant states that the delay was attributable to "the time it took to identify and review responsive records." *Response* at 22*, Exhibit #1, Hardy Declaration* at ¶¶ 5, 8. "[I]f the government's assertion for any delay is the slowness of the FOIA process despite its due diligence, disclosure after the lawsuit is filed, even if long delayed, will not in itself justify the award of fees." *Terris, supra,* 794 F. Supp. 2d at 38.

### D.  The Reasonableness of the Proposed Attorney Fees

Defendant's argument that the proposed are not reasonable is mooted by the finding that Plaintiff did not substantially prevail and is thus not eligible for an award of fees. However, in support of its argument that the proposed fees are not reasonable, Defendant submits that because Plaintiff initiated the FOIA request to facilitate it pleadings in *Parsons*, an award of attorney fees would constitute a "windfall." *Response* at 23-24 (*citing Terris*, at 39). The Defendant also disputes the 11.3 hours billed prior to filing suit, arguing that the time spent prior to the expiration of the 20-day response period would have been better spent "communicating with the FBI regarding the status of the requests." *Id.* at 24 (*citing Motion, Exhibit 1).* Defendant disputes that Plaintiff is entitled to reimbursement for the three hours Plaintiff billed for time reviewing Defendant's motion to dismiss "two erroneously named plaintiffs" before stipulating to the dismissal. *Id.* at 25. Defendant notes that the District Court's order granting in part and denying in part the earlier motion for summary judgment wholly rejected Plaintiff's theory that documents were being improperly withheld, contending that Plaintiff is not entitled to reimbursement for time spent on a failed argument. *Id.* at 24-25.

Because I recommend denying the motion for attorney fees, it is not necessary to reach the question of whether some of Plaintiff's billings are unreasonable. Defendant has requested "the opportunity to respond more fully to the specific charges" if the District Court "concludes that Plaintiff is eligible for and entitled to an award of attorney fees." *Response* at 25. Accordingly, I recommend that in the event that the District Court rejects my findings that Plaintiff is not entitled to fees, supplemental briefing be ordered for

determination of whether the proposed fees are reasonable.

## IV. CONCLUSION

For these reasons, I recommend that Plaintiff's motion for attorney fees [Doc. #47] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).

**Objections are  due by September 2, 2015.**

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response.

**The Response is due by September 16, 2015.**

The Response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in

the same order raised, each issue contained within the objections.

Under E.D. Mich. LR 72.1(d)(4), "A person may file a reply brief within 7 days of service of a response."

**The Reply is due on September 23, 2015.**

                 /s/R. Steven Whalen           
                 R. STEVEN WHALEN
                 UNITED STATES MAGISTRATE JUDGE

Date: August 17, 2015

Certificate of Service

I certify that a copy of this order was served upon parties of record on August 17, 2015 via electronic or postal mail.

                 /s/A. Chubb              
                 CASE MANAGER