UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HERTZ SCHRAM PC,

        Plaintiff,                              Civil Action No. 12-CV-14234

vs.                                       HON. MARK A. GOLDSMITH

FEDERAL BUREAU OF
INVESTIGATION,

        Defendant.
_____/

**OPINION AND ORDER (1) OVERRULING PLAINTIFF'S OBJECTIONS (Dkt. 54), (2) ACCEPTING THE RECOMMENDATION CONTAINED IN THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (Dkt. 53), AND (3) DENYING PLAINTIFF'S MOTION FOR ATTORNEY FEES (Dkt. 47)**

## I. INTRODUCTION

Before the Court is Chief Magistrate Judge R. Steven Whalen's Report and Recommendation ("R&R") (Dkt. 53) regarding Plaintiff Hertz Schram PC's ("Hertz Schram") motion for attorney fees (Dkt. 47) pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. The Magistrate Judge recommended denying Plaintiff's motion for attorney fees, and Plaintiff filed objections to that recommendation (Dkt. 54). Defendant filed a response (Dkt. 55) to which Plaintiff filed a reply (Dkt. 56). For the reasons described below, the Court overrules Plaintiff's objections, accepts the recommendation contained in the Magistrate Judge's R&R, and denies Plaintiff's motion for attorney fees.[1]

---

[1] The factual and procedural background of this case is adequately set forth in the Magistrate Judge's R&R. See R&R at 1-3. Therefore, it need not be repeated here. To the extent Plaintiff challenges the factual background provided by the Magistrate Judge, the Court addresses such challenges in the body of this decision.

1

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 54, the Court "may refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter." Fed. R. Civ. P. 54(d)(2)(D). The Court reviews de novo those portions of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

## III. ANALYSIS

### A. Applicable Law

FOIA permits courts to assess reasonable attorney fees and litigation costs against the United States where a plaintiff suing under FOIA has "substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). A FOIA plaintiff "substantially prevails" where it "obtain[s] relief through either" (i) "a judicial order, or an enforceable written agreement or consent decree," or (ii) "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." Id. § 552(a)(4)(E)(ii). Courts apply a two-part test in determining whether an award of fees is appropriate. GMRI, Inc. v. E.E.O.C., 149 F.3d 449, 451 (6th Cir. 1998). First, courts must determine whether a litigant has substantially prevailed and is thus "eligible" for attorney fees in the first instance. Id. A court order is not necessary for a litigant to have substantially prevailed "if it demonstrates that the prosecution of the lawsuit was reasonably necessary to obtain requested information, and that the existence of the lawsuit had a causative effect upon the release of that information." Id. at 451-452.[2]

---

[2] It appears that a subsequent Supreme Court decision, Buckhannon Bd. & Care Home, Inc. v. West Virginia, 532 U.S. 598 (2001), may have rejected this "catalyst" theory as applied to federal fee-shifting statutes, such as FOIA. See AutoAlliance Int'l, Inc. v. U.S. Customs Serv., 300 F. Supp. 2d 509, 513 (E.D. Mich. 2004). However, FOIA was amended in 2007 to include the second definition of "substantially prevailed," where an agency unilaterally changes its position or voluntarily complies with the request. See Warren v. Colvin, 744 F.3d 841, 844-845 (2d Cir. 2014). In light of this amendment, the Sixth Circuit's "catalyst" theory appears to remain relevant.

Second, if a FOIA plaintiff is eligible for fees, courts must then determine whether the plaintiff is "entitled" to such an award based upon a balancing of equitable considerations. GMRI, 149 F.3d at 451. Courts consider the following three factors in determining whether a FOIA plaintiff is entitled to fees and costs: "the benefit to the public deriving from the case; the commercial benefit to the complainant and the nature of its interest in the records; and whether the agency's withholding had a reasonable basis in law." Detroit Free Press, Inc. v. Dep't of Justice, 73 F.3d 93, 98 (6th Cir. 1996) (quoting Am. Commercial Barge Lines Co. v. N.L.R.B., 758 F.2d 1109, 1111 (6th Cir. 1985)). Whether a prevailing party is entitled to attorney fees lies within the sound discretion of the court. GMRI, 149 F.3d at 452.

## B. The Parties' Arguments

In its motion, Plaintiff contends that it is eligible for attorney fees because it substantially prevailed in the instant litigation, and that it is entitled to such fees under a proper consideration of the appropriate equitable factors. Specifically, Plaintiff argues that, "this lawsuit was reasonably necessary to obtain the information requested in Plaintiff's FOIA request because there was no indication that Defendant intended to respond to Plaintiff's FOIA request in a manner compliant with the FOIA." Pl. Mot. at 5-6. In support, Plaintiff asserts that the FBI failed to comply with FOIA in the time and manner prescribed by the statute, and that the FBI did not provide any type of substantive response until after the lawsuit was filed, suggesting that the lawsuit had a causative effect on the FBI's search and release of responsive records. Id. at 6-7. Plaintiff further argues that the equitable factors weigh in favor of an award because: (i) the litigation benefited the public interest insofar as unreasonably delaying the release of documents harms the public interest generally, and the request was made in connection with a lawsuit on behalf of "Juggalos," a group of individuals allegedly harmed by the FBI's classification of the

3

group as a gang; (ii) Plaintiff has no commercial interest in the information sought because the information "was not intended to be sold or used for any other overt purpose" other than its litigation on behalf of "Juggalos"; and (iii) the FBI offered no explanation for why it failed to respond to Plaintiff's FOIA request within the 20-day statutory period and, therefore, "[t]here is no reasonable basis for the FBI's delay in producing the requested documents." Id. at 8-10.

Defendant makes a number of arguments in response, including a threshold assertion that a law firm representing itself in FOIA litigation cannot qualify for an award of fees. Def. Resp. to Pl. Mot. at 6-9 (Dkt. 49). Defendant further disputes that Plaintiff has substantially prevailed in the litigation, contending that Plaintiff prematurely filed suit before the expiration of the 20-day statutory period. Id. at 11-12. Defendant also states, and files an affidavit in support, that Plaintiff's FOIA request was processed according to the agency's routine administrative processing procedure; consequently, the lawsuit cannot be said to have caused Defendant to have "voluntarily or unilaterally change[d] its position." Id. at 12-13. Defendant attributes any delay in responding to Plaintiff's request, or in releasing responsive documents, to the administrative process of searching for, identifying, and reviewing potentially responsive records. Id. at 13-14. Finally, Defendant asserts that the equitable factors weigh against an award of fees because: (i) in responding to Plaintiff's request the agency did not engage in bad faith, and the information requested was primarily for the benefit of private litigants, was not the type of information the public would rely on in making political choices, and was largely public-source material; (ii) the request had a commercial purpose — primarily as a means of discovery in connection with litigation pursued by Plaintiff on behalf of its own clients — and Plaintiff had a private incentive to litigate the suit in the absence of an award of fees; and (iii) the FBI responded reasonably to

the request in processing it according to standard procedures and withholding only those documents as authorized by statutory exemption. Id. at 15-23.

Upon reviewing the parties' arguments, the Magistrate Judge recommended denying Plaintiff's motion. While the Magistrate Judge found that Plaintiff's representation by members of its own firm does not preclude an award of fees, the Magistrate Judge ultimately concluded that Plaintiff failed to show that it substantially prevailed in the litigation, and that the equitable factors did not support an entitlement to fees. Specifically, the R&R states that Plaintiff improperly computed time under the statute and, therefore, prematurely filed its lawsuit within the statutory timeframe allotted for the FBI's response. R&R at 10. The R&R further observed that, by the time the FBI received notice of the lawsuit, the FBI had already informed Plaintiff that it was processing the request according to its standard protocol. Id. at 10-11. The Magistrate Judge found that these facts undermined Plaintiff's argument that the lawsuit was "reasonably necessary" to obtain a response to its request. Id. at 11. The Magistrate Judge further found any causative connection between the lawsuit and the FBI's response lacking because the FBI began processing the request before it learned of the lawsuit and because any delays in response and/or production were associated with high volumes of requests coupled with the established "first-in, first-out" protocol. Id. at 12-13.

The Magistrate Judge also found it significant that Plaintiff did not receive any additional documents related to its request in opposing Defendant's first motion for summary judgment, id. at 13-14, and that Defendant's position in its second such motion was essentially a "clarification" of its original, and ultimately successful, position, id. at 14-15. Accordingly, the Magistrate Judge found that the lawsuit did not effect a change in the FBI's position. Id. at 15.

Lastly, the Magistrate Judge opined that the equitable factors did not warrant an award of fees because: (i) Plaintiff prematurely filed suit and the FBI did not behave unreasonably in response to Plaintiff's request; (ii) Plaintiff's motivation for the request was chiefly commercial, in that it was made in connection with a lawsuit pursued on behalf of clients; and (iii) the FBI offered a reasonable explanation for the delay associated with its production of responsive documents, and it had a reasonable basis in law for withholding certain documents, as evidenced by the Court's partial grant of Defendant's first motion for summary judgment. Id. at 15-18.

Plaintiff now objects to the Magistrate Judge's recommendation, primarily on the basis that the Magistrate Judge erroneously calculated the 20-day statutory time period from the date of the FBI's acknowledgement of receipt of the request — not from the date of actual receipt, as required by the statute. Pl. Obj. at 2-3. Accordingly, Plaintiff maintains that the lawsuit was not filed prematurely, and that the FBI did fail to respond to Plaintiff's request in a timely manner. Id. at 2-3, 3-4. Plaintiff continues that, because there was no indication that the FBI intended to comply with its obligations under the statute, the lawsuit was reasonably necessary to obtain the requested information. Id. at 3-4. Plaintiff further argues that the lawsuit provoked the FBI's compliance with the statute, as evidenced by the FBI's failure to produce documents until after the lawsuit was filed, and by the Court's initial finding that the FBI's search was not reasonably tailored to Plaintiff's request. Id. at 4-5.

Plaintiff additionally objects to the Magistrate Judge's application of the equitable factors. Plaintiff claims that because its suit was not premature, the lawsuit did vindicate the public's interest in FOIA. Id. at 5-6; Pl. Mot. at 8-9. Plaintiff also relies on its earlier assertion that the information was related to a separate lawsuit commenced on behalf of individuals allegedly harmed by the FBI's "gang" designation. Pl. Mot. at 9. Plaintiff further asserts that it

6

does not have a commercial interest in the request because the related lawsuit seeks only an injunction — a form of equitable relief — on behalf of the public, specifically those individuals that identify as "Juggalos." Pl. Obj. at 6.[3] Finally, Plaintiff argues that Defendant has failed to explain why it waited more than the 20 days allowed by the statute to respond to Plaintiff's request; as such, there is no reasonable basis for the FBI's delay in producing the requested documents. Id. at 7.

In response to Plaintiff's objections, Defendant argues that Plaintiff waived the argument that its lawsuit was not premature by failing to present such an argument to the Magistrate Judge, noting that Plaintiff failed to address this argument in its reply brief. Def. Resp. to Pl. Obj. at 2-3.[4] Defendant also argues that even if Plaintiff's lawsuit was not premature, Plaintiff still cannot show that the lawsuit was reasonably necessary to obtain the requested information, because the FBI had already begun processing the request according to established protocol at the time Plaintiff filed suit, and any subsequent delay was the result of identifying and reviewing responsive records. Id. at 4-5. Defendant distinguishes the present circumstances from the case on which Plaintiff relies, Miller v. U.S. Dep't of State, 779 F.2d 1378 (8th Cir. 1985), on the grounds that the Miller plaintiff waited almost a year before filing suit and contacted the agency numerous times about the status of his request beforehand, whereas here, Plaintiff anticipated filing suit prior to the expiration of the statutory period, without ever contacting the FBI as to the

---

[3] Plaintiff further points out that even if it was to receive a commercial benefit as a result of the instant litigation, no single equitable factor is dispositive and the remaining factors weigh in favor of an award of fees. Pl. Obj. at 6.

[4] In its reply in support of its objections, Plaintiff asserts it did present this argument to the Magistrate Judge, because it "provided all of the relevant dates to the magistrate to determine whether this suit was timely filed; therefore, this issue was not waived." Pl. Reply at 2. Plaintiff also continues to quarrel with Defendant over how many days, precisely, passed from the time of receipt of the request to acknowledgment of the request, and on what day beyond the 20-day statutory time period Plaintiff actually filed suit. See id. at 2-3.

status of Plaintiff's request. Def. Resp. to Pl. Obj. at 5. Defendant asserts that it also fully complied with its FOIA obligations well before the agency in Miller. Id. at 5-6. Defendant also relies on the fact that Plaintiff did not receive any additional documents as a result of the litigation, noting that Defendant did not perform additional searches, but, rather, merely elaborated on its initial search protocol. Id. at 6.

Finally, Defendant disputes that the Magistrate Judge relied exclusively on the timing of Plaintiff's lawsuit in finding that Plaintiff was not entitled to attorney fees under the equitable factors. Id. Instead, Defendant contends that the Magistrate Judge properly found that the FBI responded reasonably to Plaintiff's request, that Plaintiff had sufficient private incentive to litigate its suit, and that any delay in producing the requested documents was the result of routine administrative delay. Id. at 6-7.[5]

**B. Discussion**

The Court reviews Plaintiff's request for fees under the statute in the two-step manner prescribed by the Sixth Circuit. As described below, the Court finds that Plaintiff has failed to satisfy either prong of the analysis: it is neither eligible for attorney fees, nor is it entitled to attorney fees.

**1. Eligibility for fees**

The Court agrees with Plaintiff that the statute calculates the 20-day response period from the date of "the receipt" of the request, and not from the date an agency acknowledges receipt. See 5 U.S.C. § 552(a)(6)(A)(ii) ("The 20-day period . . . shall commence on the date on which the request is first received by the appropriate component of the agency . . . ."). Plaintiff's FOIA

---

[5] Defendant further observes that Plaintiff's two-page reply brief to Defendant's response addressed only Defendant's argument that Plaintiff was ineligible for fees due to its status as a law firm. Def. Resp. to Pl. Obj. at 3.

request was submitted by email on August 24, 2012, making it received by the agency on the same date. See id. According to the Court's calculations, 20 days from August 24, 2012, excluding weekends and legal holidays, id. § 552(a)(6)(A)(i), expired at the close of business on September 21, 2012. Therefore, it appears that Plaintiff's suit, filed on September 25, 2012, was not premature.

The Court rejects Defendant's argument on waiver. In its motion for attorney fees, Plaintiff argued that the FBI failed to advise Plaintiff within the 20 days required by statute whether it would comply with Plaintiff's request. Pl. Mot. at 6. This was sufficient to put the Defendant on notice, and alert the Magistrate Judge, as well, that Plaintiff was contending that its lawsuit was not premature.

Nonetheless, Plaintiff has failed to demonstrate that the litigation was reasonably necessary to obtain a response, or otherwise had a causative effect on the FBI's release of documents. Nor has Plaintiff shown that the lawsuit elicited a voluntary or unilateral change in the FBI's position with respect to the request.

Plaintiff places a great deal of emphasis on the fact that the FBI sent a letter informing Plaintiff that it was searching its central records for responsive material on the same date that Plaintiff filed its complaint, in addition to the fact that both of the FBI's productions occurred while the lawsuit was pending. See Pl. Obj. at 4-5. However, as Defendant observes, the mere sequence of events is not sufficient to establish that the lawsuit was the triggering agent for the FBI's response. See Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1496 (D.C. Cir. 1984) ("[T]he mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation.").

According to the declaration of David M. Hardy, a high volume of requests, amounting to an almost 35% increase from the previous year, caused a backlog. See Second Hardy Decl., Ex. 1 to Def. Resp. to Pl. Mot., ¶ 5 (Dkt. 49-1).[6] This backlog, coupled with the FBI's "first-in, first-out" procedure for responding to FOIA requests, resulted in delays in the FBI's response time. Id.[7] A failure to comply strictly with the statutory deadlines, especially where the delay is attributed to the administrative processing of the request, does not necessarily mean that a lawsuit is necessary to obtain the requested information. See Simon v. United States, 587 F. Supp. 1029, 1031-1032 (D.D.C. 1984). And here, the delay in the agency's first substantive response to Plaintiff — a letter stating that it was searching its records for responsive material — was a minimal one, just two business days after an official response was due.

The declaration also makes clear that the FBI was processing Plaintiff's request at the time Plaintiff filed its complaint; specifically, the agency had received and perfected the request and was in the process of searching for and collecting potentially responsive material. Second Hardy Decl. ¶¶ 6-7; compare with Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec., 811 F. Supp. 2d 216, 232-233 (D.D.C. 2011) (finding litigation prompted production where agency did not claim to have conducted substantive searches for responsive documents prior to the lawsuit). And while Plaintiff refers to the fact that the FBI's letter stating that it was searching its records was authored on the same day Plaintiff filed its complaint to suggest that the filing of

---

[6] According to the declaration, David M. Hardy is the Section Chief of the Record/Information Dissemination Section, Records Management Division within the FBI, and has held that position since August 1, 2002. Second Hardy Decl. ¶ 1. In this position, Mr. Hardy supervises a group whose "collective mission is to effectively plan, develop, direct, and manage responses to requests for access to [FBI] records and information pursuant to the FOIA." Id. ¶ 2. Mr. Hardy states that he is "familiar with the procedures followed by the FBI in responding to requests for information," and is aware of the treatment afforded to Plaintiff's FOIA request. Id. ¶ 3.

[7] Plaintiff has not challenged or contested any of the facts set forth in the declaration, nor has it presented any countervailing evidence; therefore, the Court accepts the facts in the declaration as stated therein.

the complaint prompted that letter, the force of Plaintiff's suggestion is undercut by the fact that the letter was sent approximately a week before the agency section that had begun conducting the search — the Record/Information Dissemination Section — had learned of Plaintiff's lawsuit. See Second Hardy Decl. ¶ 7.

According to the Hardy Declaration, the FBI continued to process Plaintiff's request pursuant to established protocols after it learned of the lawsuit, until all responsive records had been found and reviewed, and non-exempt records had been released. Id. ¶ 8. An interim production was released approximately two months after the agency learned of the lawsuit, and a final production was made less than two months after that. See Pl. Obj. at 4. The declaration attributes the subsequent delay in production to the time required to identify the documents, review the documents line by line for protected information, and to redact all exempt information. Hardy Decl. ¶ 8. Accordingly, the lag in the FBI's response time appears to be the product of administrative delay that is routinely associated with bureaucratic processes and procedures; there is no suggestion that the FBI was intentionally resisting or obstructing Plaintiff's request.

In sum, the Court finds that the FBI's delay in providing an initial response to Plaintiff does not suggest that the agency was shirking its responsibilities under the statute. Indeed, this initial response indicates not only that the agency was processing the request, but that it was also keeping Plaintiff abreast of the agency's progress with respect to that request. Moreover, the Court finds that the length of time preceding the FBI's production of responsive material to be reasonable. See Lovell v. Dep't of Justice, 589 F. Supp. 150, 154 (D.D.C. 1984) (nearly three-year delay adequately explained by processing of requests in chronological order and large number of requests, especially given that the first step in processing had been completed prior to

11

filing of lawsuit); Crooker v. Fed. Bureau of Prisons, 579 F. Supp. 309, 311-312 (D.D.C. 1984) (holding plaintiff did not substantially prevail, despite six-month delay in production caused by transfer of request to regional office for search of records, large number of similar requests, and very limited resources).

This is simply not the type of case where it appears that the requestor had no choice but to file a lawsuit in order to receive a satisfactory response from the defendant agency. E.g. Dixie Fuel Co. v. Callahan, 136 F. Supp. 2d 659, 663-664 (E.D. Ky. 2001) (finding that lawsuit was reasonably necessary where plaintiff filed suit eight months after initial request, because agency inaction gave plaintiff no reasonable assurance that the request would be answered); Ellis v. United States, 941 F. Supp. 1068, 1077-1078 (D. Utah 1996) (holding that plaintiff's persistence in litigating claim was necessary to obtain information, as evidenced by four-month delay for agency's "final response" and agency's continued productions six and eight months after litigation commenced); Ettlinger v. F.B.I., 596 F. Supp. 867, 879 (D. Mass. 1984) (finding that lawsuit was necessary where initial FOIA and fee waiver request went unanswered for more than 18 months before plaintiff filed suit); Marschner v. Dep't of State, Sec'y of State, 470 F. Supp. 196, 199-200 (D. Conn. 1979) (holding that plaintiff substantially prevailed in a lawsuit filed four months after initial request, where agency did not respond to request prior to disclosure, which was not made until three months after complaint was filed, and provided no explanation for the delay); Deininger & Wingfield, P.A. v. I.R.S., No. 4:08CV00500JLH, 2009 WL 2241569, at *4 (E.D. Ark. July 24, 2009) (finding a causal connection between lawsuit and disclosure where agency, for almost a year, repeatedly gave anticipated dates for production only to renege without explanation, but produced documents relatively quickly following filing of complaint).

Here, there is no indication that the agency's response would have been any different in the absence of the lawsuit. See Maynard v. C.I.A., 986 F.2d 547, 568 (1st Cir. 1993) ("[P]laintiff presented no evidence suggesting that this litigation was necessary to obtain requested information or that the litigation caused the agency to produce the information."). Accordingly, the Court concludes that Plaintiff's lawsuit was not reasonably necessary to obtain the requested information, or to obtain the FBI's compliance with the statute. See Weisberg, 745 F.2d at 1496-1497 (vacating district court's finding that plaintiff substantially prevailed, because it was not clear whether the lawsuit caused the agency to release the documents or whether the release was made pursuant to the administrative processing of the request). Plaintiff, therefore, cannot be said to have "substantially prevailed" on this basis.

Furthermore, there is no evidence that the agency ever changed its position with respect to Plaintiff's FOIA request, let alone that it did so either because of Plaintiff's lawsuit or because of Plaintiff's opposition to Defendant's motion for summary judgment. While Plaintiff relies on the fact that the Court denied Defendant's motion for summary judgment, in part, because it was unclear whether the FBI's search was reasonably tailored to Plaintiff's request, Defendant's second motion for summary judgment, and the Court's Opinion granting that motion, make clear that the FBI did not change its position, but, rather, provided additional, and more detailed, information about its search for the material that allowed the Court to conclude that the initial search was sufficient under the statute. See 11/5/2014 Op. & Order at 4-5, 8-9 (Dkt. 45). At bottom, nothing about Plaintiff's lawsuit had a causative effect on the FBI.[8]

---

[8] Notably, Plaintiff did not challenge any of the statutory exemptions under which the FBI withheld certain documents, and those exemptions were subsequently found appropriate by the Court. See 2/25/2014 Op. & Order at 17 (Dkt. 33). This is consistent with the Court's conclusion that the FBI acted reasonably in connection with the FOIA request.

13

Accordingly, because Plaintiff did not show that it "substantially prevailed" in its request, the Court finds that Plaintiff is not eligible for attorney fees under the statute.

### 2. Entitlement to fees

Even if Plaintiff were eligible for attorney fees for having "substantially prevailed" in this lawsuit, the Court agrees with the Magistrate Judge and Defendant that the equitable factors do not support an entitlement to fees.

Plaintiff argues that the Magistrate Judge's conclusion that the lawsuit did not benefit the public was based on the erroneous assumption that Plaintiff's lawsuit was premature. Pl. Obj. at 5. However, the Magistrate Judge also distinguished the cases on which Plaintiff relied for the proposition that the release of records vindicates the public's general interest in FOIA. R&R at 16. Specifically, those cases involved protracted delay and litigation before the agency would release the records, but here the records were released within a relatively short period, and the agency did not behave unreasonably in responding to the request in the first instance. Id. The Court agrees with the Magistrate Judge that the agency did not act unreasonably here, and consequently the litigation did not further the public's general interest in agency transparency and accountability under FOIA. Cf. Comer v. I.R.S., No. 97-CV-76329-DT, 2002 WL 31835437, at *2 (E.D. Mich. Oct. 30, 2002) (determination of public interest may be based on reasonableness of agency behavior). Moreover, the Court disagrees that because the request was made in furtherance of Plaintiff's litigation on behalf of a class of individuals that call themselves "Juggalos," the present lawsuit benefited the public. See Pl. Mot. at 9. While Plaintiff suggests that the government has wrongfully classified these individuals as a gang, it fails to explain how the public interest — rather than the interest of this discrete set of people — is served by challenging that classification. Furthermore, there is no evidence that any of the

documents produced in response to Plaintiff's request shed any particular light on the government's decision to classify "Juggalos" as a gang.

The Court also agrees with the Magistrate Judge that Plaintiff had a commercial interest in obtaining these documents. While Plaintiff asserts that the associated litigation seeks only injunctive relief — a form of equitable relief — that fact does not change the underlying commercial nature of Plaintiff's relationship with those litigants. Notably, Plaintiff has not indicated that it is representing its clients pro bono; therefore Plaintiff is presumably being compensated for its services in the underlying litigation, and to the extent the request was made in furtherance of that litigation, Plaintiff has a pecuniary interest in obtaining the documents. See Davy v. C.I.A., 550 F.3d 1155, 1160 (D.C. Cir. 2008) (observing that requestors who seek documents for a personal advantage are not necessarily deserving of a public subsidy because they do not require an incentive to litigate); Ellis, 941 F. Supp. at 1079 ("Courts have routinely found that the use of FOIA as a substitute for discovery constitutes a private, noncompensable interest.") (collecting cases).

Finally, the Court agrees that the agency had a reasonable basis for withholding certain records. First, as discussed above, Plaintiff did not contest the FBI's withholding of certain documents under various statutory exemptions, and the Court subsequently affirmed that the FBI had met its burden in demonstrating the applicability of the exemptions. Moreover, and contrary to Plaintiff's assertions, Defendant has offered a reasonable explanation for the FBI's failure to respond to Plaintiff's request within the 20-day statutory time period. The Hardy Declaration references a "first-in, first-out" policy in processing requests, as well as a significant uptick in requests that created a backlog causing delays. The Court has already determined that the FBI did not conduct itself unreasonably in response to Plaintiff's request, and that any resultant

delays were reasonable and likely the product of administrative processing, as opposed to intentional stonewalling. As such, the FBI had a reasonable basis both for withholding certain documents and for the delay in the production of non-exempt responsive documents.

None of the three equitable factors is met here, and Plaintiff fails to offer any other convincing equitable consideration in its favor. Therefore, the Court agrees with the Magistrate Judge that Plaintiff would not be entitled to an award of fees.[9]

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for attorney fees (Dkt. 47) is denied.

SO ORDERED.


Dated: September 30, 2015         s/Mark A. Goldsmith
       Detroit, Michigan          MARK A. GOLDSMITH
                                  United States District Judge


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 30, 2015.

                                  s/Carrie Haddon
                                  Case Manager

---

[9] Because the Court concludes that Plaintiff is not eligible for, nor entitled to, attorney fees under FOIA, it need not address the Magistrate Judge's conclusion that Plaintiff is not precluded from attorney fees by virtue of its status as a law firm represented by its own members.